[S.F. No. 22831. In Bank. May 10, 1972.]

JESSIE BARQUIS et al., Plaintiffs and Appellants, v.
MERCHANTS COLLECTION ASSOCIATION OF
OAKLAND, INC., et al., Defendants and Respondents.

## COUNSEL

Eugene M. Swann, Alan Verson and Peter N. Hagberg for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Andrea Sheridan Ordin, Deputy Attorney General, Terry J. Hatter, Jr., Paul L. McKaskle, Abby Soven, Lucy K. McCabe, Don B. Kates, Jr., Chern & Sharpe, Gertrude D. Chern and Carolyn M. Farren as Amici Curiae on behalf of Plaintiffs and Appellants.

Irwin J. Eskanos, in pro per., Crosby, Heafey, Roach & May, Carlisle C. Crosby, Richard J. Heafey, P. Gerhardt Zacher, Peter W. Davis, Gross, Gross, Rose & Schwartz and Barry R. Gross for Defendants and Respondents.

## OPINION

**TOBRINER, J.**—This action was commenced in the Superior Court of Alameda County in 1968 by six individual plaintiffs on behalf of themselves and other similarly situated persons against defendant Merchants Collection Association of Oakland, Inc. (Merchants),[1] a licensed collection agency, to challenge the agency's alleged practice of knowingly and wilfully filing actions in improper counties, pursuant to statutorily inadequate

---

[1]Plaintiffs joined the agency's attorney, Irwin Eskanos, as a party defendant. For convenience, both the agency and its attorney will be referred to in this opinion simply as "defendant," "defendant agency," or "the agency."

complaints, for the purpose of impairing its adversaries' ability to defend these actions, and with the intent, and effect, of obtaining an increased number of default judgments.

To remedy the consequences of the foregoing alleged misfiling practice, plaintiffs sought a variety of relief, including (1) an injunction to restrain the agency from continuing to utilize the challenged practice in the future and (2) an order setting aside, as void, all judgments obtained by defendant in the two years prior to the suit, pursuant to complaints which did not comply with the requirements of section 396a of the Code of Civil Procedure or with the requirements of section 1812.10 of the Civil Code.[2] Defendant demurred to plaintiffs' first amended complaint on the grounds that such complaint failed to state a cause of action; the trial court sustained the demurrer without leave to amend and subsequently entered a judgment dismissing the action. It is from this judgment of dismissal which plaintiffs appeal.

For the reasons discussed below, we have concluded that under the allegations of the amended complaint the judgment for defendant with respect to the claim for injunctive relief must be reversed. In alleging that the collection agency has *wilfully* commenced actions in *improper counties,* with *knowledge* that such counties are improper, and for the improper *ulterior purpose* of impairing its adversaries' ability to defend such suits, plaintiffs have sufficiently alleged facts which, if true, demonstrate that the agency has in the past been continually committing a gross "abuse of process" and that the agency threatens to continue this unlawful, tortious conduct in the future. If such allegations can be substantiated at trial, we conclude that plaintiffs are entitled to an injunction to restrain the alleged conduct because it constitutes both a continuing mass tort against which other legal remedies are inadequate and an "unlawful . . . business practice" which may be enjoined under Civil Code section 3369.

With respect to plaintiffs' attempted wholesale attack on past judgments obtained on complaints inadequate under section 396a of the Code of

---

[2]As explained below, section 396a of the Code of Civil Procedure applies only to actions which fall within the jurisdiction of the justice courts; at the commencement of this suit, this covered actions involving claims of $500 or less. Section 1812.10 of the Civil Code, at the date this suit was commenced, covered only actions brought on "retail installment contracts" as defined in the Unruh Installment Sales Act (Civ. Code, § 1800 et seq.).

In addition to the main prayers for injunctive relief and the setting aside of final judgments, plaintiffs requested that defendant agency be required to deposit in court all moneys collected on the allegedly "void" judgments, and that the agency be required to disclose the names of all defendants in such actions to plaintiffs. Plaintiffs also prayed for such general and punitive damages as might be appropriate.

Civil Procedure, however, we conclude that the challenged final judgments may not be set aside as "void." Although we recognize that section 396a is intended to protect litigants against the evil of distantly obtained default judgments, the section contemplates that the trial judge's independent scrutiny of the plaintiff's complaint in the original action will afford such protection. As we explain below, if the trial judge fails to discover a deficient complaint and erroneously permits the entry of a default judgment, a defendant retains the right to challenge such judgment either on appeal or by motion to set aside the default judgment. We conclude, however, that such error does not deprive the trial court of "jurisdiction" in the fundamental sense, and therefore that plaintiffs may not collaterally attack such judgments long after they have become final.

Finally, we conclude that inasmuch as plaintiffs concede that the judgments which they attack as violative of Civil Code section 1812.10 concern actions on "installment accounts," rather than on "installment contracts," as defined by the applicable code sections, plaintiffs' attack on pre-1968 judgments cannot succeed. In view of the specificity of the statutory definition of "installment contract" contained in the Unruh Retail Installment Sales Act, and the fact that at the time of the commencement of this litigation section 1812.10 covered only suits on such "contracts," we cannot find that the actions questioned by the instant suit were subject to the provisions of section 1812.10 when brought. Plaintiffs accordingly are not entitled to any relief under the Unruh Retail Installment Sales Act.

## 1. *The facts*

In reviewing the sufficiency of plaintiffs' complaint against defendant's demurrer, we, of course, must treat the demurrer as admitting all properly pleaded factual allegations of that complaint. (See, e.g., *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) As described in the complaint, defendant Merchants is one of the largest collection agencies in Alameda County, filing over 2,000 actions in the Oakland-Piedmont municipal court each year—almost 14 percent of the entire number of suits filed in that court annually. Merchants does collection work primarily for large retail establishments, such as J. C. Penney Co. and H. C. Capwell Co., which maintain retail stores throughout the entire State of California; these establishments assign their customers' allegedly overdue obligations—unpaid balances remaining on their patrons' charge accounts—to Merchants for collection. The named plaintiffs in this action are all defendants in actions filed by Merchants in the Oakland-Piedmont Municipal Court in Alameda County; none of the individual plaintiffs resides in Alameda County and all contend that, as to them, the actions brought by defendant were improperly filed.

Plaintiffs brought the instant action on their own behalf and on behalf of similarly situated individuals[3] to combat the strategy that they allege to be a conscious "pattern and practice" of Merchants in filing inadequate complaints in improper courts. As described in the complaint, the defendant's practice involves two related, but analytically distinct, features. First, the practice involves the agency's commencement of suits in a county which is not the proper place for trial under the applicable statutory provisions (Code Civ. Proc., § 395; Civ. Code, § 1812.10), with knowledge that such venue is improper, and for the ulterior purpose of impairing a defendant's ability to present his defense. Second, the practice involves the initiation of these actions by means of "form complaints" which, in contravention of section 396a of the Code of Civil Procedure, fail to state sufficient facts to enable a trial court to determine whether the action is in fact filed in the proper venue. As a consequence of this combination of improper procedures, defendant agency allegedly obtains many default judgments and favorable settlements which it would not otherwise secure.

Although plaintiffs' objection is directed at defendant's single, alleged pattern of consciously filing inadequate complaints in improper venues, plaintiffs' first amended complaint is divided into three distinct causes of action.

The first cause of action attacks defendant's use of its improper filing practice in all contract actions in which the amount in controversy does not exceed $500. Code of Civil Procedure section 395, the general venue provision, establishes that in contract actions the proper court for trial is "either [1] the county where [the] obligation is to be performed," [2] the county "in which the contract in fact was entered into" or [3] "the county in which the defendant . . . resides at the commencement of the action" and provides further that "the county in which such obligation is incurred shall be deemed to be the county where it is to be performed unless there is a special contract in writing to the contrary." At all times relevant to this action section 396a of the Code of Civil Procedure provided that: "In all actions and proceedings . . . within the subject matter jurisdiction of

---

[3]In the trial court, defendant contended that the instant action was not an appropriate "class action," apparently on the grounds that the plaintiff class did not have a sufficiently shared interest to make a representative suit appropriate. Under the flexible standards articulated in our recent decisions in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964] and *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113], however, it is apparent that at least at this stage of the pleadings the plaintiffs, in attacking a uniform practice allegedly utilized with respect to all the class members, have demonstrated a sufficient common interest to survive a demurrer on these grounds. Apparently in light of these recent cases, decided during the pendency of this appeal, defendant has not challenged the "class" nature of the action in this court.

justice courts [$500 or less at the time this suit was commenced], *plaintiff must state facts in the complaint verified by oath . . . or in an affidavit . . . from which it can be determined which court is, under the provisions of this title, the proper court for the trial of such action or proceeding, . . .*" (Italics added.) Thus, in contract actions involving a claim of less than $500, under Code of Civil Procedure sections 395 and 396a the complaint "must state facts" demonstrating that the county in which suit is brought is either (1) the present residence of the defendant, (2) the place where the contract was entered into or (3) the place where the contract was to be performed as set forth in a *special written contract* to that effect.

Plaintiffs allege that the collection agency continually failed to bring such actions in a proper county and that the complaints it filed in these actions regularly failed to meet the requirements set out above. Plaintiffs incorporated into their first amended complaint copies of the verified municipal court complaints—"form complaints"—which the defendant agency had filed in the Oakland-Piedmont Judicial District against several of the named plaintiffs. In each instance, the collection agency's complaint alleged that the individual sued had become indebted to the agency's assignor in a specified amount—under $500—for merchandise sold on an open book account by a designated large retailer, and that the agency was "informed and believe[d]" that the account was "payable in the City of Oakland, County of Alameda." The form complaint, drafted by defendant, failed to declare, however, either where the individual being sued resided, where the obligation sued upon was entered into or whether there was a special contract in writing providing for the performance, i.e., payment, of the obligation either in the Oakland-Piedmont Judicial District or in Alameda County generally.

In this initial count, plaintiffs contend that such form complaints do not satisfy the requirements of section 396a, and, relying on section 396a's mandate that "if such complaint or affidavit be not so filed, no further proceedings shall be had in the action except to dismiss the same . . . ," assert that all judgments obtained pursuant to these inadequate form complaints are void and should be set aside.

In addition to alleging the stratagem of this "pattern of practice" of filing inadequate complaints in an improper county, plaintiffs' first cause of action specifically alleges that defendant agency filed such suits "with knowledge" that the county in which such suits were brought was not a proper county for trial under section 395, and that the agency filed the factually deficient form complaints "to avoid stating the relevant facts which would indicate that their actions were not commenced in the proper court for trial." The

complaint further alleges that as a result of the agency's practice, a large number of debtors have been greatly hampered in their fundamental right to a meaningful opportunity for a trial on the merits, that defendant has obtained numerous undeserved default judgments and inequitable settlements, and that defendant has carried on its practice with the *intention* of inflicting this harm on the debtors and for the *purpose* of reaping these improper benefits.

The allegations of plaintiffs' second cause of action substantially parallel those of the first cause, but this count is directed at those actions filed by the collection agency on the basis of *retail sales agreements* (as distinguished from other contract actions), and is not limited to actions claiming damages under $500. Plaintiffs assert that suits instituted by defendant on the basis of installment open book accounts in 1967 and 1968, the years covered by this action, were governed by the provisions of Civil Code section 1812.10 and that under that section such actions were also brought in an improper venue. Section 1812.10, a provision of the Unruh Retail Installment Sales Act, specifies the four locations in which an action on a "contract" governed by the Unruh Act may be brought: (1) "the county in which the contract was in fact signed by the buyer," (2) "the county in which the buyer resided at the time the contract was entered into," (3) "the county in which the buyer resides at the commencement of the action" or, (4) "the county in which goods purchased pursuant to such contract have been so affixed to real property as to become a part of such real property." Plaintiffs again claim that with respect to these "installment sales" actions defendant agency knowingly commenced its suits in an improper venue in order to make the defense of these actions more difficult and thereby to obtain an increased number of default judgments. Plaintiffs also claim that judgments obtained in actions falling within the provisions of section 1812.10, but brought in an improper county, are void.

The third cause of action, incorporating the allegations of the first and second causes, alleges that the improper "pattern and practice" set out in those counts constitutes an "unlawful and fraudulent business practice" within the meaning of Civil Code section 3369 and seeks an injunction, as provided by that section, to restrain the collection agency from continuing the practice in the future.

In sum, on the basis of the allegations of defendant's intentional misfiling practice, plaintiffs sought both injunctive relief and a nullification of all past judgments obtained over a two-year period as a result of defendant's practice; the trial court sustained a general demurrer to the first amended complaint. We turn first to the sufficiency of the complaint in relation to the prayer for injunctive relief.

2. *Under the allegations of the complaint, plaintiffs are entitled to an injunction restraining the collection agency from continuing its practice of intentionally filing actions in improper venues.*

██ Although plaintiffs ground their request for injunctive relief solely on the basis of Civil Code section 3369, we are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory. The courts of this state have, of course, long since departed from holding a plaintiff strictly to the "form of action" he has pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained. (See, e.g., *MacIsaac v. Pozzo* (1945) 26 Cal.2d 809, 815 [161 P.2d 449]; *Zellner v. Wassman* (1920) 184 Cal. 80, 88 [193 P. 84]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 301, p. 1974.)

Plaintiffs' first amended complaint alleges that defendant has knowingly and wilfully instituted actions against consumers in the wrong county, under inadequate complaints, for the ulterior purpose of impairing these individuals' defenses of the actions and with the intent of securing default judgments by virtue of the inconvenience of the improper forum. The complaint also alleges that defendant agency threatens to continue this practice in the future, undeterred by the fact that such conduct contravenes specific statutory provisions.

If plaintiffs can prove these allegations at trial, they will have established that defendant is engaged in a mass "abuse of process." In light of the apparent inadequacy of other legal remedies, we conclude that plaintiffs would be entitled to an injunction restraining this threatened multiple tort. Moreover, we also find that this behavior, when utilized as a general practice by a collection agency whose primary business is litigation, additionally constitutes an "unlawful . . . business practice," and thus that the conduct may alternatively be enjoined under Civil Code section 3369.

a. ██ *Under the alleged facts, defendant's conduct amounts to a tortious abuse of process, which may be enjoined since alternative legal remedies are inadequate to protect the interests of the plaintiff class.*

In *Templeton Feed & Grain v. Ralston Purina Co.* (1968) 69 Cal.2d 461, 466 [72 Cal.Rptr. 344, 446 P.2d 152], we recently reiterated the two fundamental elements that constitute the basis of the tort of abuse of process: " 'first an ulterior purpose; and second, a wilful act in the use of

the process not proper in the regular conduct of the proceeding.' " Under the present pleadings, defendant's alleged conduct clearly embraces both elements of this tort. First, in alleging that defendant has *wilfully* and *knowingly* filed actions in an *improper* county pursuant to statutorily *inadequate* pleadings, the complaint clearly sets out "a wilful act in the use of process[4] not proper in the regular course of the proceeding"; second, the complaint just as explicitly alleges that such action was undertaken for the *ulterior purpose* and with the intent to impair individuals' rights to defend suits and, in effect, to coerce inequitable settlements and default judgments by making it inconvenient for defendants to defend suits on their merits.

The recent case of *Czap* v. *Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1 [86 Cal.Rptr. 417], provides an apt analogy. In *Czap* the plaintiff instituted an action for abuse of process alleging that the defendant collection agency, with knowledge that plaintiff's wages were exempt from garnishment, was threatening to bring repeated levies on the debtor's salary, for the purpose of forcing the debtor to pay the judgment out of her exempt wages; the agency allegedly recognized that the repeated levies on the debtor's salary, though improper, would still, as a practical matter, jeopardize her employment. The plaintiff in *Czap,* as the plaintiffs here, sought an injunction to restrain the collection agency from continuing the alleged "abuse of process." The trial court in *Czap* sustained the agency's demurrer to the complaint; the Court of Appeal, however, reversed, concluding that plaintiff's allegations did indeed present a case of an abuse of process.

The *Czap* court observed: "Here it is alleged that respondent, knowing

---

[4]"Process," as used in the tort of "abuse of process," has never been limited to the strict sense of the term, but instead has been interpreted broadly to encompass the entire range of "procedures" incident to litigation. For example, in *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 94-95 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152], the court recognized that while "the giving of a notice that a deposition will be taken is not 'process' in the strictest sense of the word . . . in a proper case [the] abuse of the powers which a litigant derives from the taking of a deposition on proper notice gives such notice the status of 'process' for the purpose of the tort [of abuse of process]." Similarly, in *Tellefsen* v. *Key System Transit Lines* (1961) 198 Cal.App.2d 611, 613 [17 Cal.Rptr. 919], the court, while finding no abuse in the case before it, recognized that under certain circumstances, the *taking of an appeal* could give rise to an abuse of process. (See also *Tranchina* v. *Arcinas* (1947) 78 Cal.App.2d 522 [178 P.2d 65] (eviction under false pretense constituted abuse of process)). Other jurisdictions have recognized the propriety of an abuse of process action when a plaintiff has intentionally misfiled an action for an improper purpose. (See *Bond* v. *Chapin* (1844) 49 Mass. (8 Met.) 31.) This broad reach of the "abuse of process" tort can be explained historically, since the tort evolved as a "catch-all" category to cover improper uses of the judicial machinery that did not fit within the earlier established, but narrowly circumscribed, action of malicious prosecution. (See *Italian Star Line* v. *United States Shipping Board E. F. Corp.* (2d Cir. 1931) 53 F.2d 359, 361 [80 A.L.R. 576].)

that appellant's wages were exempt from execution, nevertheless procured a levy and threatens to procure others for the ulterior purpose of jeopardizing appellant's employment and thus forcing her to apply to the payment of the debt earnings or other assets which under the statute are exempt." (7 Cal.App.3d at pp. 5-6.) The court concluded: "If [these allegations] are true, they state a cause of action for abuse of process." (7 Cal.App.3d at p. 6.) In our case, to paraphrase the *Czap* court, plaintiffs similarly allege that defendant collection agency *knowing* that the county in which it was instituting suit was an improper one, *nevertheless* has instituted such suits and threatens to continue instituting such suits *for the ulterior purpose* of making the action more difficult to defend and thereby forcing its adversary to default or to settle on terms favorable to the agency. If proven, these allegations, like the allegations in *Czap,* sufficiently demonstrate that defendant has committed an abuse of process.

The *Czap* court, after finding sufficient allegations of an abuse of process, went on to hold that an injunction could properly issue to enjoin the collection agency from continuing the repeated tortious conduct, since plaintiff's complaint sufficiently established the inadequacy of other legal remedies to prevent irreparable injury. (7 Cal.App.3d at p. 7.) As discussed hereafter, we believe that in the instant case alternative legal remedies similarly fail to prevent the on-going injuries caused by defendant's alleged tortious conduct, and that injunctive relief must be afforded to avoid irreparable injury.

Defendant first suggests that since all of the challenged actions are, by hypothesis, brought in the wrong county, plaintiffs have an obvious adequate legal remedy to the agency's alleged misfiling practice since any person sued in an improper county may obtain a change of venue. Thus, defendant contends, the complaint fails to establish any need for an injunction. Although, as a theoretical matter, this right to a change in venue does exist, plaintiffs persuasively explain that it is the very serious *practical limitations* of this "right" which the agency's misfiling practice seeks to exploit.

As plaintiffs point out, as a practical matter the mere filing of an action in an inconvenient forum will inevitably deter many debtors from voicing any objection to the suit. Two factors coalesce to produce this result. First, and most importantly, since the amount claimed in the agency's actions is relatively small, the cost of travel to a distant county, or of hiring an attorney for that purpose, even simply to interpose a motion of a change of venue, renders such counteraction by the debtor financially infeasible. Second, the bulk of individuals sued by defendant agency allegedly command low incomes and few resources and cannot afford to engage counsel to advise them of their "venue" rights.

According to the complaint, defendant agency is well aware of these realistic limits on its adversaries' theoretical right to move for a change of venue. Since, by commencing suits in an inconvenient forum, the agency can deter most of its adversaries from responding to complaints, plaintiffs insist that the agency does, and will, utilize this practice because the returns are "profitable," even if the agency must concede the impropriety of the selected forum on those rare occasions when a debtor does in fact challenge the venue.[5] These allegations clearly illustrate the inadequacy of the legal remedy—the right to move for change of venue—as a means of protection to potential litigants from the adverse effects of defendant's unfair filing practices.

Defendant further contends, however, that the Legislature has already perceived the practical limitations on the plaintiff class' ability to interpose change of venue motions, and has met the problem in section 396a of the Code of Civil Procedure. This provision requires the *trial court,* in actions falling within the section's terms, to dismiss "on its own motion" complaints filed in the wrong venue, thereby obviating the necessity of a defendant's appearance in such actions. As described more fully later in this opinion, section 396a is indeed designed to protect defendants in actions on small claims from the inconvenience and harassment incident to suits brought in improper venues; the section attempts to afford such protection by placing a responsibility on trial courts to protect such defendants' interests.

Once again, however, according to the allegations of the present complaint, the theoretical protection extended by this provision fails in the face of the realities of the situation. Plaintiffs allege that defendant agency has specifically designed its "form complaints" to avoid stating facts which would demonstrate that its actions are brought in an improper venue. They urge that, although these complaints do not satisfy section 396a, and thus should have been dismissed under this section, defendant has in fact succeeded in obtaining large numbers of default judgments on the basis of such complaints. In this respect defendant agency again has allegedly devised a procedure to take advantage of the practical limitations of the situation, this time exploiting the harried trial court's inability to scrutinize fully each complaint that is brought before it.

Defendant, of course, attempts to shift the entire onus for plaintiff's plight

---

[5] Actually the risk defendant agency takes by misfiling complaints is not very great, because even in the rare case when venue is challenged, the only "sanction" consists of the transfer of the suit to the proper venue. (See Code Civ. Proc., § 396a.) Thus if the agency succeeds in making the defense difficult enough, it will obtain a default judgment; if not, it will at worst face the trial of the case in the proper venue. Under these circumstances, the agency has everything to gain and nothing to lose by initially filing actions in improper courts.

onto the trial courts for failing to dismiss on their own motion all actions brought on inadequate complaints. While we cannot excuse any failure of the trial courts in this respect, we nevertheless do not think that defendant can so easily avoid the responsibility of intentionally and systematically seeking to obtain the improper benefits resulting from any practical flaws in the judicial implementation of section 396a. Plaintiffs do have a right to prevent the defendant agency from continuing the future exploitation and exacerbation of the situation.

In sum, if the facts concerning defendant's pattern of misfiling complaints are true, an injunction, and the additional sanctions that can be employed to enforce such a remedy, may be the only practicable means of curtailing such practices.

In finding an injunctive remedy appropriate in this case, we note additionally that the judiciary itself has a strong interest in eliminating any systematic misuse of the judicial machinery; indeed, an effective remedy is particularly necessary under the present allegations for several reasons.

First, we recognize that the "pattern or practice" of knowingly filing actions in distant counties in order to gain an unconscionable advantage is not a unique or isolated practice, but instead has been continuously identified in both the legal literature[6] and in public hearings;[7] as a widespread and common abuse in the debt collection field. The potential magnitude of the problem is suggested by the testimony of Richard Givens, the chief of the consumer fraud unit of the United States Attorney's office for the Southern District of New York during one such federal hearing. Mr. Givens related a conversation he had recently had with an attorney, in which the lawyer admitted that a single client "had obtained *10,000* default judgments *during the past year* through the use of 'inconvenient forums.' " (Italics added.) (*Summary of Hearings on Debt Collection Practices, National Commission on Consumer Finance* (1971) 88 Banking L.J. 291, 293-294.) The Federal Trade Commission has recently conducted extensive hearings on a variety of debt collection abuses, prominent of which is the practice of "[i]nitiating suits against consumer debtors in distant locations resulting in default judgments due to the debtor's failure to defend." (36 Fed. Reg. 15473, 15474 (1971).) In light of the apparent prevalance of the practice attacked by the instant complaint, the importance of providing an effective injunction remedy becomes manifest.

---

[6]See, e.g., Comment, *Small Claims Courts and the Poor* (1969) 42 Southern California Law Review 493, 499; cf. 51 Ops.Cal.Atty.Gen. 179, 180a (1968).

[7]See, e.g., *Summary of Hearings on Debt Collection Practices, National Commission on Consumer Finance* (1971) 88 Banking Law Journal 291 (summary of hearings held on June 22 and 23, 1970).

Second, the widespread misuse of the courts in this manner contributes to an undermining of confidence in the judiciary by reinforcing the unfortunate image of courts as "distant" entities, available only to wealthy or large interests—an image evidently subscribed to by a significant proportion of our citizenry.[8] For many low income citizens, the only contact with the judicial system comes as a defendant in a debt collection suit; many studies have pointed out that the extremely high default rate in such actions —often well over 90 percent[9]—frequently leads such consumers to conclude that the legal system is merely a "rubber stamp"[10] for the improper practices utilized by predatory agencies. Under these conditions, courts have a strong interest in ensuring that abuses of the legal process by collection agencies are not perpetuated.

Having noted the widespread occurrence of the alleged misfiling abuse, we must emphasize that, at this stage of the proceedings, defendant collection agency's actual use of such a practice remains only an allegation. For the purpose of reviewing defendant's demurrer, however, we must of course treat the complaint's allegations as true; in this posture, we believe that plaintiffs have stated a cause of action for injunctive relief from an abuse of process.

b. ■ *Defendant's alleged conduct additionally constitutes an "unlawful . . . business practice" which may be enjoined under Civil Code section 3369.*

We additionally conclude that inasmuch as the alleged repeated violation of statutory requirements has been adopted as a "pattern" or "practice" of conduct by a collection agency, for whom the filing of litigation is a primary part of its business activity, this "pattern" of misfiling complaints

[8]Chief Justice Burger has stressed that courts must improve the "machinery of justice" so that the sense of confidence in the courts will not be destroyed by the belief among people "who have long been exploited" that "the courts cannot vindicate their legal rights from fraud and overreaching in the smaller daily transactions of life." (Burger, *What's Wrong With the Courts: The Chief Justice Speaks Out,* U.S. News & World Report (vol. 69, No. 8, Aug. 24, 1970) 68, 71 (address to ABA meeting, Aug. 10, 1970).)

[9]See, e.g., *Summary of Hearings on Debt Collection Practices, National Commission on Consumer Finance* (1971) 88 Banking Law Journal 291, 313 (testimony of Prof. David Caplovitz); Project, *Resort to the Legal Process in Collecting Debts from High Risk Credit Buyers in Los Angeles—Alternative Methods for Allocating Present Costs* (1967) 14 University of California Los Angeles Law Review 879, 890-891; Schrag, *The Rights of Consumers* in The Rights of Americans (Dorsen ed. 1970) page 136.

[10]See, e.g., Comment, *Small Claims Court and the Poor* (1969) 42 Southern California Law Review 493, 494; Note, *Abuse of Process: Sewer Service* (1967) 3 Columbia Journal of Law and Social Problems 17, 22, 29; *Summary of Hearings on Debt Collection Practices, National Commission on Consumer Finance* (1971) 88 Banking Law Journal 291, 323 (testimony of Mrs. Gardiner Jones, FTC Commissioner).

amounts to an "unlawful . . . business practice," which may be enjoined under section 3369 of the Civil Code.

Section 3369 provides in relevant part: "Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction. [Par.] *As used in this section, unfair competition shall mean and include unlawful, unfair or fraudulent business practice* . . . . [Par.] Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney . . . or by any person acting for the interests of itself, its members or the general public." (Italics added.)

Defendant agency contends initially that section 3369's prohibition of "unfair competition" is confined to practices involving competitive injury, i.e., resulting in an unfair injury to a *competitor,* and thus that the injury to a *consumer* resulting from its alleged misfiling practice does not fall within the province of the statute. Defendant further claims that even if the section is not limited to anti-competitive acts, it should not be expanded so broadly beyond the concepts of common law "unfair competition" or "deceptive advertising" as to include the misuse of judicial procedures. For the reasons discussed below, we reject both of these arguments.

Although in a common law context, competitive injury originally composed an essential element of the tort of "unfair competition," the Legislature, by adopting section 3369, broadened the scope of legal protection against wrongful business practices generally, and in so doing extended to the entire consuming public the protection once afforded only to business competitors. Thus, section 3369 indicates that "unfair competition" as used in the section cannot be equated with the common law definition of "unfair competition," but instead specifies that, for the purposes of its provisions, unfair competition "shall mean and include *unlawful, unfair or fraudulent business practice* . . . ." (Italics added.)

In 1938 the United States Congress amended the Federal Trade Commission Act to give the commission authority to regulate *"unfair* or deceptive acts or *practices"* (italics added), in addition to its original powers over "unfair methods of competition"; as the United States Supreme Court has observed, the addition of this "unfair . . . practices" language, represented "a significant amendment showing Congress' concern for *consumers* as well as for competitors." (Italics added.) (*FTC* v. *Colgate Palmolive Co.* (1965) 380 U.S. 374, 384 [13 L.Ed.2d 904, 913, 85 S.Ct. 1035]; see *FTC* v. *R.F. Keppel & Bros., Inc.* (1934) 291 U.S. 304, 310 [78 L.Ed. 814, 818, 54 S.Ct. 423]; *FTC* v. *The Sperry & Hutchinson Co.* (1972) 405 U.S.

233, 244 [31 L.Ed.2d 170, 179, 92 S.Ct. 898].) Section 3369's parallel broad proscription of "unlawful [or] unfair . . . business practice[s]" illustrates no less a concern for wronged consumers. Moreover, the section demonstrates a clear design to protect consumers as well as competitors by its final clause, permitting inter alia, any member of the public to sue on his own behalf or on behalf of the public generally. If the Legislature had been solely concerned with protection against the evil of unfair competitive advantage, it would certainly have more narrowly circumscribed the class of persons permitted to institute such actions.[11]

Given this strong statutory indication that section 3369 is not confined to anti-competitive business practices, we cannot be surprised that the courts, in interpreting the section, have long declared that the provision is at least as equally directed toward "the right of the *public* to protection from fraud and deceit[,]" as toward the preservation of fair business competition. (Italics added.) (*American Philatelic Soc.* v. *Claibourne* (1935) 3 Cal.2d 689, 698 [46 P.2d 135].) In *People* ex rel. *Mosk* v. *National Research Co. of Cal.* (1962) 201 Cal.App.2d 765, 771 [20 Cal.Rptr. 516], the court directly confronted the contention proffered by defendant in the instant case and held that "[t]he equitable relief authorized by Civil Code section 3369 is not circumscribed by any prerequisite showing that the conduct in question be limited to the field of business competition." (See

---

[11]In *Colligan* v. *Activities Club of New York, Ltd.* (2d Cir. 1971) 442 F.2d 686 [170 U.S.P.Q. 113], cert. den. (1971) 404 U.S. 1004 [30 L.Ed.2d 557, 92 S.Ct. 559], the Second Circuit interpreted section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) providing for suit by "any person who believes that he is . . . damaged by the use of . . . [a] false description or representation[,]" as permitting such actions to be brought only by injured commercial entities and not by consumers. In so finding, however, the court relied heavily on a statement of congressional purpose included in section 45 of the Lanham Act, which declared that "[t]he intent of this chapter . . . is to protect persons engaged in such commerce against unfair competition." (442 F.2d at pp. 691-692.) Section 3369 contains no comparable provision evidencing an intention to limit its protection to "persons engaged in . . . commerce," and in the absence of such explicit limiting language we cannot properly read the section's broad, unambiguous language as inapplicable to consumers, whose interests are certainly directly affected by unlawful or unfair business practices. (Cf. *Data Processing Service* v. *Camp* (1970) 397 U.S. 150, 153 [25 L.Ed.2d 184, 188, 90 S.Ct. 827].)

Moreover, in adopting its restricted interpretation of section 43(a) of the Lanham Act, the *Colligan* court drew considerably on principles of federalism, which it believed warranted the limiting of federal "involvement" in the area of unfair competition and consumer protection, fields traditionally subject to state regulation. (442 F.2d at pp. 692-693.) Such considerations of federalism are, of course, entirely inapplicable to our court's present task of interpreting a state statute; indeed, the restrained federal stance exhibited in *Colligan* makes the recognition of an effective state consumer remedy all the more imperative. In sum, we find nothing in the *Colligan* decision which requires us to constrict the natural reach of section 3369's broad standing provision.

also *Athens Lodge No. 70* v. *Wilson* (1953) 117 Cal.App.2d 322, 325 [255 P.2d 482].)

We conclude that in a society which enlists a variety of psychological and advertising stimulants to induce the consumption of goods, consumers, rather than competitors, need the greatest protection from sharp business practices. (Cf. *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 807-808 [94 Cal.Rptr. 796, 484 P.2d 964].) Given the terms of the section, the purpose of the enactment and the controlling precedent, we reject defendant's suggested limitation of section 3369 to "anti-competitive" business practices.

Defendant additionally contends, however, that even if section 3369 is not limited to "competitive injuries," the section's proscription of "unfair competition" should not be read so broadly so as to include the agency's alleged misfiling practice; that, instead, the provision be confined to more traditional "deceptive" or "fraudulent" conduct, conduct sharing at least some of the common features of misrepresentation that characterized the precedent of "unfair competition." We recognize that most of the cases arising under section 3369 to date have challenged "business practices" in which a business enterprise was presenting itself, or its "merchandise," to the public in a deceptive manner so as to defraud consumers (see, e.g., *Academy of Motion Picture, etc.* v. *Benson* (1940) 15 Cal.2d 685 [104 P.2d 650]; *American Philatelic Soc.* v. *Claibourne* (1935) 3 Cal.2d 689 [46 P.2d 135]) and also that these decisions frequently refer to the "essence" of section 3369 as the protection from any conduct likely to deceive the consumer. (See, e.g., *West* v. *Lind* (1960) 186 Cal.App.2d 563, 567 [9 Cal.Rptr. 288].)

The language of section 3369, however, does not limit its coverage to such "deceptive" practices, but instead explicitly extends to any "unlawful, unfair *or* deceptive business practice"; the Legislature, in our view, intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.[12] Indeed,

---

[12]The case of *International etc. Workers* v. *Landowitz* (1942) 20 Cal.2d 418 [126 P.2d 609] is not necessarily contrary to this reading of section 3369. In *Landowitz* the plaintiff union sought to enjoin defendant cleaners from violating statutory minimum price regulations. At the time of the filing of the litigation, the minimum price legislation, which afforded criminal sanctions, also provided injunctive relief, but, by the time the case had reached this court, the Legislature had amended the statute to eliminate the injunctive remedy. Despite this amendment, however, plaintiffs continued to seek an injunction under Civil Code section 3369.

In denying such relief, our court was influenced both by the fact that the recent amendment evidenced an obvious legislative decision that such violations not be enjoinable and also by the traditional reluctance of equity to enjoin criminal behavior. (See *People* v. *Lim* (1941) 18 Cal.2d 872, 880 [118 P.2d 472].) Although the

although most precedents under section 3369 have arisen in a "deceptive" practice framework, even these decisions have frequently noted that the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable " 'new schemes which the fertility of man's invention would contrive.' " (*American Philatelic Soc.* v. *Claibourne* (1935) 3 Cal.2d 689, 698 [46 P.2d 135].) As the *Claibourne* court observed: "When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one. There is a maxim as old as law that there can be no right without a remedy, and in searching for a precise precedent, an equity court must not lose sight, not only of its power, but of its duty to arrive at a just solution of the problem." (3 Cal.2d at pp. 698-699; see, *Ojala* v. *Bohlin* (1960) 178 Cal.App.2d 292, 301 [2 Cal.Rptr. 919]; accord, *FTC* v. *The Sperry & Hutchinson Co.* (1972) 405 U.S. 233, 240 [31 L.Ed.2d 170, 177, 92 S.Ct. 898].) With respect to "unlawful" or "unfair" business practices, section 3369 specifically grants our courts that power.

In permitting the restraining of all "unfair" business practices, section 3369 undeniably establishes only a wide standard to guide courts of equity; as noted above, given the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate. In the instant case, however, we need not undertake the task of determining the "fairness" of defendant's alleged conduct in light of contemporary standards, because insofar as defendant's alleged practice involves the repeated violation of specific venue statutes, the practice is enjoinable under section 3369 as an *"unlawful . . .* business practice," totally apart from its inherent "fairness." As originally enacted in 1933, section 3369 defined "unfair competition" only in terms of "unfair or fraudulent business practice[s]"; most of the reported cases, dealing in deceptive conduct, arose under the statute as so worded. In 1963, however, the Legislature amended section 3369 to add the word "unlawful" to the types of wrongful business conduct that could be enjoined. Although the legislative history of this amendment is not particularly instructive,[13] nevertheless, as one

---

*Landowitz* opinion does contain some language which may be read to limit section 3369 to common law "unfair competition," subsequent cases, as we have seen, have not confined the section so narrowly; in view of the factual context of *Landowitz,* such language was not crucial to the decision. Moreover, as we discuss *infra,* in 1963, well after *Landowitz,* section 3369 was amended to cover any *"unlawful"* business practice and thus, in any event, *Landowitz's* view of the reach of the unamended provision cannot be regarded as controlling in the instant case.

[13]The 1963 amendment was passed unanimously by both chambers without debate. (3 Sen. J. (1963 Reg. Sess.) pp. 4441-4442; 3 Assem.J. (1963 Reg. Sess.) p. 4999.)

commentator has noted "it is difficult to see any other purpose than to extend the meaning of unfair competition to anything that can properly be called a business practice and that at the same time is forbidden by law." (Note, *Unlawful Agricultural Working Conditions as Nuisance or Unfair Competition* (1968) 19 Hastings L.J. 398, 408-409.)

The recent case of *Diaz* v. *Kay-Dix Ranch* (1970) 9 Cal.App.3d 588 [88 Cal.Rptr. 443] represents the first reported appellate decision in an action brought under section 3369 to enjoin an "unlawful" business practice.[14] In *Diaz* plaintiff agricultural workers brought a class action to enjoin defendant farm owners from continuing an alleged practice of knowingly employing Mexican nationals who had entered this country in violation of federal immigration laws. Although the *Diaz* court ultimately concluded that considerations of federalism warranted the withholding of equitable relief in the case before it, the court did not dismiss the suit as improper under section 3369, but indicated that the alleged activity could constitute an "unlawful . . . business practice" under section 3369. (See 9 Cal.App. 3d at pp. 591-593 and fn. 3.)

As discussed above, under the allegations of plaintiffs' first amended complaint, defendant's practice consists of repeated violations of specific statutory provisions of both the Code of Civil Procedure and the Civil Code; such a pattern of behavior clearly constitutes "unlawful" conduct, and if an enterprise pursues such a course of conduct as a "business practice," we conclude that the activity may be enjoined under section 3369. Defendant agency does not, and could not, claim that under the allegations of the complaint the challenged conduct is not a "business practice." The complaint specifically alleges that the agency undertakes its alleged misfiling "as a pattern and practice" and obviously such practice, if in fact conducted, directly relates to the defendant collection agency's conduct of its "business." We thus conclude that plaintiffs' allegations sufficiently state a cause of action for injunctive relief under Civil Code section 3369, and that the trial court erred in sustaining defendant's demurrer to plaintiffs' third cause of action.

---

[14]The paucity of recent case law interpreting section 3369 reflects the fact that in recent years most of the injunctions sought by the Attorney General under this section have been stipulated to by the business concerns involved. A recent empirical study of the practices of the "direct selling industry" in Los Angeles found that "In almost all cases [instituted under section 3369], a final injunction is agreed to by the parties. In fact, not once in the last two years has the Attorney General found it necessary to carry his demands through trial to final judgment." (Project, *The Direct Selling Industry: An Empirical Study* (1969) 16 U.C.L.A. L.Rev. 889, 963.)

3. ■ *Default judgments obtained by defendant agency pursuant to complaints inadequate under Code of Civil Procedure section 396a, although vulnerable to attack on appeal or to timely motion for relief from default, are not "void" for lack of jurisdiction in the fundamental sense.*

Having determined that, under the allegations of the complaint, plaintiffs are entitled to an injunction enjoining the continuation of defendant's alleged "distant filing" practice, we now reach the question of whether plaintiffs are entitled to the additional, more sweeping remedy of setting aside all judgments obtained by defendants pursuant to this practice during the two-year period preceding the institution of this action. As noted above, plaintiffs seek to set aside two separate categories of judgments: those falling within section 396a of the Code of Civil Procedure and those purportedly covered by section 1812.10 of the Civil Code. We initially address the contentions relating to the former category of cases, involving section 396a.

As detailed above, plaintiffs contend that defendant has continually filed suits in the wrong county, utilizing "form complaints" inadequate under section 396a, and has improperly obtained numerous judgments on the basis of such inadequate complaints. Plaintiffs base their present attempt to set aside all such judgments on the ground that the provisions of section 396a are "jurisdictional" and thus that all judgments obtained on the basis of complaints violative of section 396a are "void." In opposing the granting of such relief, defendant primarily emphasizes that venue objections are traditionally waived by a party if not raised in the original litigation. Accordingly defendant contends that because plaintiffs, as a class, failed to raise the alleged noncompliance with section 396a in their original actions, they may not now attack such final judgments in the instant proceeding.[15]

---

[15]Although the agency argues preliminarily that its form complaints are not inadequate under section 396a, the "facts" stated by such complaints—that the agency is "informed and believes" that the debt is "payable" in Oakland—are not sufficient to comply with sections 395 and 396a. The purpose of section 395's requirement of a "special contract" specifying the place of "performance," if suit is to be brought in such a location, is to prevent a defendant's venue rights from being destroyed by a plaintiff's unilateral assignment of the obligation to a distant assignee. Since the agency's complaint fails to allege the existence of a "special contract" under which the defendant in effect agreed to suit in Oakland, and also fails to allege facts demonstrating that the defendant in the suit resides in the county or entered into the contract in the county, the form complaint does not satisfy the statutory requirements. (See, e.g., *Dawson* v. *Goff* (1954) 43 Cal.2d 310, 314-315 [273 P.2d 1]; *Armstrong* v. *Smith* (1942) 49 Cal.App.2d 528, 532 [122 P.2d 115].)

The case of *Carlon* v. *Gray* (1935) 10 Cal.App.2d 658, 662 [52 P.2d 966], is in point. In *Carlon* the challenged complaint, like the form complaints at issue here,

Defendant is, of course, correct in maintaining that a party's failure to raise a timely objection to venue has traditionally been considered a waiver of any "right" to a proper venue. (See, e.g., *Lyons* v. *Brunswick-Balke etc. Co.* (1942) 20 Cal.2d 579, 582 [127 P.2d 924, 141 A.L.R. 1173]; *Wadleigh* v. *Phelps* (1905) 147 Cal. 541, 542 [82 P. 200].) Section 396b of the Code of Civil Procedure represents an explicit codification of the general "waivability" of venue defects, providing that, notwithstanding the governing venue provisions, an action may generally be tried "in the court where commenced" unless the defendant makes a timely motion for change of venue;[16] if no such motion is urged, the defendant is considered to have waived any defect. Plaintiffs do not dispute that this is the general rule under section 396b.

Section 396b explicitly recognizes, however, that the cases governed by the immediately preceding section, section 396a, i.e., actions within the subject matter jurisdiction of justice courts, constitute an exception to its general rule.[17] Plaintiffs contend that both the statutory language of section 396a, and the purpose underlying its enactment, reveal the section as a distinct provision to which the general principles of "waiver" of venue rights, relied on by defendant, do not apply.

Although, for the reasons discussed below, we agree with plaintiffs' contention that section 396a embodies an exception, in cases involving small monetary claims, to the general rule that a failure to move for a change of venue constitutes a "waiver" of any venue defects, it does not follow that this "nonwaivability" feature of section 396a automatically renders all final judgments obtained under inadequate complaints subject to

---

contained only the plaintiff's conclusory statement that the contract "was to be performed in the . . . named county." The court held that "[t]he opinion of the pleader cannot be substituted for the facts existing in the case which would, or would not give the [j]ustice's [c]ourt . . . jurisdiction, and the setting forth of an opinion is not a compliance with the section of the code requiring that the 'plaintiff must state facts.' "

It is thus clear that the agency's form complaints do not satisfy section 396a; the crucial question is whether this defect renders judgments obtained pursuant to such complaints vulnerable to collateral attack.

[16]Section 396b provides in relevant part: *"Except as otherwise provided in Section 396a,* if an action or proceeding is commenced in a court having jurisdiction of the subject matter thereof, other than the court designated as the proper court for the trial thereof, under the provisions of this title, the action may, notwithstanding, be tried in the court where commenced, unless the defendant, at the time he answers or demurs, . . . files with the clerk, or with the judge if there be no clerk, an affidavit of merits and notice of motion for an order transferring the action or proceeding to the proper court, together with proof of service, upon the adverse party, of a copy of such papers." (Italics added.)

[17]Section 396b's general provisions are preceded by the clause "[e]xcept as provided in section 396a." (See fn. 16 *supra*.)

either collateral or direct attack. As we explain *infra,* we recognize that a defendant's failure to move for a change of venue does not waive his statutory right to the trial court's dismissal or transfer of the action to the proper venue. Nor does such failure preclude the defendant from attacking an improperly entered judgment on appeal or by a timely motion for relief from default. On the other hand, when a trial court erroneously fails to dismiss or transfer the action and the defendant *does not raise a timely objection* to such error, we conclude that a final judgment rendered on an inadequate complaint is not void for lack of jurisdiction and thus cannot be set aside at any time in the future.

 a. *Under section 396a, a party's failure to move for a change of venue does not constitute a "waiver" of his venue rights.*

In general, section 396a is designed to protect defendants in actions involving relatively small monetary claims from the inequitable harassment that may ensue when the action is filed in a distant venue. A brief historical review will place the section in a proper perspective.

Prior to 1933, the justice courts, which had jurisdiction over such small claims, operated with strict territorial limitations on their jurisdiction; during this early era, defendants were insulated from the harassment of actions brought in distant, inconvenient forums by the provisions of section 848 of the Code of Civil Procedure (since repealed), which in most cases limited the service of summons in justice court matters to defendants residing within the township of the justice court in which suit was brought.[18] Under the governing case law, if an action were brought in the justice court of the wrong township, and the summons was improperly served on a distant defendant, any default judgment obtained was "voidable" for lack of jurisdiction over the defendant's person and was thus subject to collateral attack. (See, e.g., *Isert* v. *Riecks* (1925) 195 Cal. 569 [234 P. 371]; *Newman* v. *Barnet* (1913) 165 Cal. 423 [132 P. 588].)

In 1933 the code provisions dealing with the jurisdiction of municipal and justice courts were completely reorganized, and both courts were given statewide jurisdiction over the person. (Code Civ. Proc., §§ 83, 84.)[19] The

---

[18]In *Isert* v. *Riecks* (1925) 195 Cal. 569, 575 [234 P. 371], the court declared that "[t]he purpose of [section 848] is to protect a defendant, who has been sued in violation thereof in a justice's court of a county other than that of his residence upon a small claim, from the expense, inconvenience, and loss of time incident to the conduct of litigation at a place far distant from his residence."

[19]Witkin reports that "[t]he chief purposes of the revision were (a) to allow transfer of a cause to the right court even after the statute of limitations had run on the right to file a new action; and (b) *to prevent collateral attack on a judgment rendered in the wrong court.*" (Italics added.) (2 Witkin, Cal. Procedure (2d ed.

Legislature, however, endeavored to maintain some protection for defendants against distant suits on small claims by enacting section 396a.[20] Under section 396a, unlike general pleading provisions, a plaintiff who institutes an action which falls within the subject matter jurisdiction of justice courts must state facts, in a verified complaint or affidavit, revealing the proper venue of the action, and the *court* then has the obligation to dismiss the action *"on its own motion,* or on motion of the defendant" (italics added) if the complaint lacks such factual declarations.[21]

By the section's terms, if an adequate complaint is not filed "no further proceedings shall be had in the action . . . except to dismiss the same . . . unless the defendant consents in writing, or in open court . . . to the keeping of the action . . . in the court where commenced." Thus, whereas under section 396b a defendant is required to make a timely motion for change of venue to preserve venue rights, under section 396a the defendant is explicitly absolved of this burden and, unless he consents in writing or in

---

1970) Actions, § 418, p. 1250.) This latter purpose directly supports our conclusion, reached *infra,* that a complaint's failure to satisfy the requirements of section 396a of the Code of Civil Procedure does not subject a final judgment to collateral attack.

[20]At the time this suit was instituted section 396a provided in relevant part:

"In all actions and proceedings within the subject matter jurisdiction of justice courts whether commenced in a justice or municipal court, plaintiff must state facts in the complaint, verified by his oath, or the oath of his attorney, or in an affidavit of the plaintiff or of his attorney filed with the complaint, from which it can be determined which court is, under the provisions of this title, the proper court for the trial of such action or proceeding. When such affidavit is filed with the complaint, a copy thereof must be served with the summons. Except as herein provided, if such complaint or affidavit be not so filed, no further proceedings shall be had in the action or proceeding, except to dismiss the same, unless defendant consents, in the manner hereinafter provided, to the keeping of the action or proceeding in the court where commenced. The court, or judge, may, on such terms as may be just, allow the complaint to be amended to conform to the requirements of this paragraph, or permit such affidavit to be filed subsequent to the filing of the complaint. . . . If it appears from such complaint or affidavit, or otherwise, that the court in which such action or proceeding is commenced is not the proper court for the trial thereof, as determined by the provisions of this title, the court in which such action or proceeding is commenced, or a judge thereof, shall, whenever such fact appears, transfer it to such proper court, on its own motion, or on motion of the defendant, unless the defendant consents in writing, or in open court (such consent in open court being entered in the minutes or docket of the court), to the keeping of the action or proceeding in the court where commenced. If such consent be given, the action or proceeding may continue in the court where commenced."

In 1970 the language of the section was slightly altered, but such changes are not relevant to our present discussion.

[21]Under section 396a, the court also has the obligation to transfer the case on its own motion, if the facts alleged in the complaint reveal that another forum is the proper court for trial. In addition, the court may "on such terms as may be just" permit a plaintiff to amend an inadequate complaint in order to conform the complaint to the requirements of the section.

open court to the maintenance of the action in the county where commenced, the trial court is instructed to dismiss *on its own motion* any action brought pursuant to an inadequate complaint.

Section 396a places these special requirements on both the plaintiff and the trial court in recognition of the serious potential for harassment that arises if a plaintiff, in a small monetary action, commences his action in a distant forum. As we have discussed above, defendants in such cases will often be financially unable to expend the money to travel to a distant forum, or to hire an attorney to do so, even simply to move for a change of venue. Without the protection of section 396a, a plaintiff, aware of these practical limitations, could exploit the situation by filing all such actions in distant counties where a defendant could not afford either to defend or to move for change of venue, and could thereby unfairly obtain default judgments or favorable settlements in such actions. To eliminate such abuse, section 396a requires the plaintiff to reveal facts demonstrating where the action should be tried, and then places upon the trial court the initial responsibility for protecting an absent defendant's interest.

In light of both the language and the purpose of the provision, we believe that the present plaintiffs' failure to appear and to move for a change of venue in their earlier litigation cannot properly be considered a "waiver" of their venue rights under section 396a. Notwithstanding these individuals' failure to make such change of venue motions, section 396a required the trial courts in the prior actions to scrutinize independently the collection agency's complaints and to dismiss or transfer such complaints on the court's own motion if they proved to be inadequate. As we have already noted, the "form complaints" allegedly utilized by the defendant agency with regularity are insufficient under sections 395 and 396a (see fn. 15, *supra*), and thus, as plaintiffs suggest, the trial courts in the earlier actions properly should not have permitted the entry of default judgments pursuant to such complaints.

The instant plaintiffs, however, possessed a variety of means of avoiding the adverse consequences resulting from the trial court's erroneous failure to independently protect their interests in the earlier litigation. First, although section 396a does not require defendants to move for a change of venue, the provision clearly permitted these parties to file such a motion to advise the court of any defect in the complaint; in fact, since a formal motion is not required, plaintiffs could have protected their interests, and assisted the trial court in its statutory duty, by bringing any inadequacies of the complaint to the court's attention through an informal letter or by any other appropriate means. (See 1 Chadbourn, et al., Cal. Pleading, § 405, p. 373.) Moreover, after a trial judge had erroneously entered a default

judgment pursuant to an inadequate complaint, the instant plaintiffs were, of course, free to attack such error on appeal of the judgment, or alternatively, to seek relief through a timely motion to set aside the default judgment pursuant to section 473 of the Code of Civil Procedure.[22] For the reasons discussed above, the parties' initial failure to move for a change of venue would not have constituted a "waiver" under section 396a and thus would not have precluded such attack on appeal or by motion for relief from default.

b. *The venue requirements of section 396a are not "jurisdictional" in a fundamental sense, and final judgments—including those entered pursuant to faulty complaints—may not be set aside as "void."*

Plaintiffs contend, however, that in addition to being subject to reversal on appeal, or to being set aside under section 473 of the Code of Civil Procedure, default judgments entered pursuant to inadequate complaints are "void" for lack of jurisdiction and are thus vulnerable to direct or collateral attack at any time. It is on this "jurisdictional" theory—a theory quite distinct from the "waiver" issue discussed above—that plaintiffs' instant attempt to set aside all default judgments entered in favor of the defendant collection agency during the two years preceding the commencement of this suit ultimately rests. As discussed below, we have concluded that section 396a does not affect the trial court's jurisdiction in a fundamental sense, and thus that improperly entered judgments which have become final are not subject to collateral attack.

Plaintiffs' characterization of section 396a as a "jurisdictional" provision rests primarily on the mandatory nature of the section's terminology. Plaintiffs point out that section 396a declares that the "plaintiff *must* state facts in the complaint . . . from which it can be determined which court is . . . the proper court for trial [and] . . . if such complaint be not so filed, no further proceeding shall be had in the action . . . except to dismiss the same, . . . ." (Italics added.) Relying on the case of *State of California* v. *Superior Court* (1936) 14 Cal.App.2d 718, 721-723 [58 P.2d 1322],[23] plaintiffs reason from this mandatory language that a judgment entered in

---

[22]Section 473 provides in relevant part: "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertance, surprise or excusable neglect"; this remedial provision is highly favored and is to be liberally construed in favor of permitting a determination of actions on their merits. (See, e.g., *Riskin* v. *Towers* (1944) 24 Cal.2d 274, 279 [148 P.2d 611, 153 A.L.R. 442]; 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 126, p. 3702.)

[23]"The word 'must,' as ordinarily used, is mandatory. [Citation.] An order contrary to the provisions of such statutes is in excess of jurisdiction." (14 Cal.App.2d at p. 722.)

contravention of the statute's directive is "in excess of jurisdiction" and "void."

As this court has cautioned on many occasions, however, the term "jurisdiction" carries a variety of meanings;[24] plaintiffs' reliance on the *State of California* decision to support their present attack on final judgments reveals a failure to appreciate the distinctions between different levels of "jurisdictional" defects. To be sure, the *State of California* decision, like the instant case, did involve a mandatory venue provision, but the "jurisdictional" issue in that case turned only on whether a writ of prohibition could issue to restrain a trial court from acting in contravention of the venue provision. The Court of Appeal's finding of an "excess of jurisdiction" in that context of prohibition was not the equivalent of a finding of a lack of jurisdiction in the fundamental sense so as to render any final judgment "void" and subject to collateral attack. "In certiorari and prohibition proceedings the term jurisdiction has a very broad meaning, and a writ may be granted where the court has no jurisdiction to act except in a particular manner, even though it has jurisdiction, in the fundamental sense, over the subject matter and the parties." (*Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460, 463-464 [171 P.2d 8].) The other "jurisdictional" precedents relied on by plaintiffs are generally distinguishable from the instant case on the same ground.[25]

In *Newman* v. *County of Sonoma* (1961) 56 Cal.2d 625 [15 Cal.Rptr.

---

[24]"[T]he term 'jurisdiction,' 'used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition . . . . Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties . . . . But in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.'" (*Brock* v. *Superior Court* (1947) 29 Cal.2d 629, 631 [177 P.2d 273, 170 A.L.R. 521], quoting *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 287-288 [109 P.2d 942, 132 A.L.R. 715].)

[25]Thus, the petitioners in *Tabor* v. *Superior Court* (1946) 28 Cal.2d 505 [170 P.2d 667], *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715] and *Evans* v. *Superior Court* (1939) 14 Cal.2d 563 [96 P.2d 107], were all seeking extraordinary writs of prohibition. In *Burtnett* v. *King* (1949) 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333], on the other hand, the plaintiff-husband in effect contested the validity of a final default judgment entered in a previous divorce action and the court did hold the default judgment "void" insofar as it awarded, despite section 580 of the Code of Civil Procedure, the wife community property which she had not sought in her complaint. The *Burtnett* court emphasized, however, that in that particular context section 580 implemented the constitutional requirements of due process, since the defaulting husband had been afforded *no notice* that the community property would be adjudicated in the prior litigation. (33 Cal.2d at p. 811.) In the instant case, of course, we encounter no such constitutional infirmities; plaintiffs did receive notice of the full amount sought in the collection agency's action.

914, 364 P.2d 850], on the other hand, our court did confront the question of whether a mandatory venue provision—in that case section 394 of the Code of Civil Procedure relating to actions brought against counties[26]—affected the trial court's "jurisdiction in the fundamental sense, that is, . . . [its] power to try the action." (56 Cal.2d at pp. 626-627.) In concluding that the provision, though mandatory, did not affect the court's "jurisdiction" in a fundamental sense, Chief Justice Gibson, writing for a unanimous court, declared: *"Except in a few cases in which the Constitution makes the place of trial jurisdictional (see art. VI, § 5) or a statute makes a local place of trial part of the grant of subject matter jurisdiction, venue is not jurisdictional [in the fundamental sense.]* [Citation.] Section 394 is not the statute granting subject matter jurisdiction in this type of case and does not purport to specify the place of trial as part of such a grant. The authority to sue counties is set forth in the Government Code, without any limitation as to the place of the suit. (Gov. Code, § 23004, subd. (a).) The Legislature, instead of including the provision before us as part of the authorization in the Government Code, placed it in the Code of Civil Procedure among several venue provisions which are clearly not jurisdictional. [Citation.] It should also be noted that section 394 provides that upon stipulation of the parties actions referred to in the section may be tried in any county." (Italics added.) (56 Cal.2d at p. 627.)

The *Newman* court's analysis with respect to Code of Civil Procedure section 394 applies equally to Code of Civil Procedure section 396a. Although the language of the section is mandatory, the present action is not one in which the Constitution makes venue jurisdictional, nor is section 396a a statute which specifies a particular place of trial as part of the grant of subject matter jurisdiction. (Cf. *McPheeters* v. *Board of Medical Examiners* (1946) 74 Cal.App.2d 46, 49 [168 P.2d 65]; Civ. Code, § 1812.10 (found jurisdictional in (1968) 51 Ops.Cal.Atty.Gen. 179).) The grant of general subject matter jurisdiction for the contract actions which plaintiffs now attack is, of course, encompassed in a variety of provisions in the Civil Code (see Civ. Code, § 1427 et seq.); instead of including section 396a as a limitation on that grant of jurisdictional power, the Legislature included the section in the Code of Civil Procedure "among several venue provisions which are clearly not jurisdictional." (56 Cal.2d at p. 627.) In addition, section 396a, like section 394 involved in *Newman,* permits a defendant to stipulate to the trial of the action in a venue other than provided by the section.

---

[26]At the time of the *Newman* decision, section 394 provided in part "that any negligence action against a county for an injury occurring therein to person or property 'shall be tried in such county.'" (56 Cal.2d at p. 626.)

Given these similarities to the *Newman* decision, we conclude that noncompliance with section 396a does not deprive the trial court of jurisdiction over the subject matter of the litigation and does not render a judgment erroneously entered "void" for lack of jurisdiction.[27] Although we recognize that a prime purpose of the section is to protect absent defendants from default judgments obtained in improper counties, the section seeks to accomplish this purpose not by rendering void all judgments obtained in improper counties, but by placing an independent responsibility on the trial court to scrutinize all complaints, even when no change of venue motion is filed. If the court improperly enters a default judgment on an inadequate complaint, the defendant can still protect himself by appealing the judgment or by moving to set aside the default. A plaintiff's failure to file an adequate complaint under section 396a does not deprive the court of jurisdiction over the subject matter of the claim, however, and thus we conclude that final judgments entered on such complaints are not void. Accordingly, defendant's demurrer to plaintiffs' first cause of action was properly sustained.

4. ■ *At the time of the commencement of this action Civil Code section 1812.90 did not govern defendant's actions on open book accounts, and thus plaintiffs are not entitled to have judgments in such actions set aside.*

In addition to attacking final judgments obtained by defendant agency in the small monetary matters governed by Code of Civil Procedure section 396a, plaintiffs' first amended complaint also seeks—in the second cause of action—to set aside past judgments in actions "on installment sales," allegedly obtained in violation of Civil Code section 1812.10,[28] the man-

---

[27]In *Carlon* v. *Gray* (1935) 10 Cal.App.2d 658, 661-662 [52 P.2d 966], apparently the only reported California authority to construe section 396a to date, the Court of Appeal, reasoning from the same faulty premise embraced by the instant plaintiffs, concluded that because the language of section 396a was mandatory, a party's failure to comply with the statute rendered any judgment void for lack of jurisdiction, and subject to collateral attack. This conclusion, an alternate ground of decision not crucial to the result in *Carlon,* preceded our court's controlling decision in *Newman* by more than two decades and reflected an unfortunately common failure of early decisions to distinguish between different levels of "jurisdictional" defects. (See *Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 725 [285 P.2d 636]. See generally 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 227, pp. 762-763.) Insofar as the *Carlon* decision is inconsistent with our present conclusion that a failure to comply with section 396a does not deprive a court of jurisdiction in a fundamental sense, it is erroneous and must be disapproved.

[28]At the time this suit was commenced, section 1812.10 provided:
"An action on a contract under the provisions of this chapter shall be commenced in the county in which the contract was in fact signed by the buyer, in the county in which the buyer resided at the time the contract was entered into, in the county

datory venue provision established by the Unruh Retail Installment Sales Act. Although the complaint describes these challenged actions as based simply on "installment sales," plaintiffs' own description of the defendant collection agency's practice, and the numerous "form complaints" appended to plaintiffs' pleadings, reveal that the actions against which plaintiffs' second cause of action is directed are actions brought by the collection agency on debts allegedly outstanding on its clients' "open book accounts."

Defendant claims that in 1968, when plaintiffs' present action was filed, suits brought on such "accounts" were not suits on "contracts" within the meaning of Civil Code section 1812.10, and thus that plaintiffs cannot properly challenge judgments obtained prior to 1968 for noncompliance with that section. Plaintiffs, while conceding in this court that the actions they attack involve "installment accounts," contend that suits on such accounts have been covered by section 1812.10's requirements since the section's enactment in 1965.

As originally enacted, section 1812.10 set out the mandatory venue requirements for all actions "on a *contract* under the provisions of this chapter." (Italics added.) In 1969, the Legislature amended the section to include all actions "on a contract *or installment account* under the provisions of this chapter," (italics added) and the critical question is whether this addition was merely a "remedial" change, simply making explicit the broad scope that the Legislature had always intended, or whether the amendment was essential to bring actions on installment accounts within section 1812.10's reach.

From the initial enactment of the Unruh Retail Installment Sales Act in 1959, the act has separately defined "retail installment contracts" and "retail installment accounts" in distinct statutory sections. Civil Code section 1802.6[29] provides in brief that " '[r]etail installment contract' or 'contract' means any contract for a retail installment sale . . . which provides for

---

in which the buyer resides at the commencement of the action, or in the county in which the goods purchased pursuant to such contract have been so affixed to real property as to become a part of such real property."

[29]At the time this suit was commenced, section 1802.6 provided in relevant part: " 'Retail installment contract' or 'contract' means any contract for a retail installment sale between a buyer and seller, entered into or performed in this state, which provides for repayment in installments, whether or not such contract contains a title retention provision, and in which a time price differential is computed upon and added to the unpaid balance at the time of sale or where no time price differential is added but the goods or services are available at a lesser price if paid by cash or where the buyer, if he had paid cash, would have received any additional goods or services or any higher quality goods or services at no added cost over the total amount he pays in installments. . . ."

repayment in installments"; the kind of transaction covered by this section is typified by the normal purchase of a substantial "consumer durable," such as a refrigerator or television set, in which the purchaser signs a distinct agreement to pay for the merchandise in installments. In contrast, Civil Code section 1802.7[30] defines the terms "retail installment account," "installment account" and "revolving account" as "an account established by an agreement . . . pursuant to which the buyer promises to pay, in installments, to a [retailer], his outstanding balance incurred in retail installment sales"; this section reaches the typical retail store "charge account," so prevalent in contemporary consumer financing. Although these two types of installment financing have many features in common, the Unruh Retail Installment Sales Act, from its inception, has defined the two categories of transactions separately.

In light of the clear distinction drawn by the act between "retail installment *contracts*" and "retail installment *accounts*" we cannot interpret section 1812.10's original reference to "actions on a contract" as also embodying actions brought on an "installment account." Although the terms of the Unruh Act must certainly be construed liberally to protect the consumer (see *Morgan* v. *Reasor Corp.* (1968) 69 Cal.2d 881, 889 [73 Cal.Rptr. 398, 447 P.2d 638]), we believe that in light of the definition provided by the act itself, creditors who brought suits on "installment accounts" prior to the 1969 amendment of section 1812.10 could not reasonably be expected to comply with the requirements of that provision. Under the present section as amended, of course, there is no question but that such actions on installment accounts are fully subject to section 1812.10.

We thus conclude that plaintiffs cannot under Civil Code section 1812.10 properly attack final judgments in actions on installment accounts which the defendant agency had secured prior to the institution of this suit in 1968. Consequently, defendant's demurrer to plaintiffs' second cause of action was properly sustained.

## 5. *Conclusion*

According to the allegations of the complaint, which we must assume

---

[30]Section 1802.7 provides in full: " 'Retail installment account' or 'installment account' or 'revolving account' means an account established by an agreement entered into in this state, pursuant to which the buyer promises to pay, in installments, to a retail seller, his outstanding balance incurred in retail installment sales, whether or not a security interest in the goods sold is retained by the seller, and which provides for a service charge which is expressed as a percent of the periodic balances to accrue thereafter providing such charge is not capitalized or stated as a dollar amount in such agreement."

to be true in reviewing the sustaining of a demurrer, defendant collection agency has, for a number of years, been following a course of conduct that can fairly be described as a gross abuse of process. In order to impair debtors' ability to defend litigation, the collection agency has been wilfully filing actions in improper venues, under inadequate "form complaints," with full knowledge that such venue is improper. By virtue of that practice, the collection agency has secured many undeserved default judgments as well as overly favorable settlements.

Initially, we have concluded that on the basis of these allegations, plaintiffs have stated a cause of action entitling them to injunctive relief, either on a theory that defendant's conduct constitutes a recurring "abuse of process" against which other legal remedies are inadequate, or alternatively, because such conduct constitutes an "unlawful . . . business practice" enjoinable under section 3369 of the Civil Code. Accordingly, the demurrer to plaintiffs' third cause of action was improperly sustained.

Second, we have determined that final default judgments, though secured in violation of Code of Civil Procedure section 396a, are not "void" for lack of jurisdiction in the fundamental sense. Consequently, defendant's demurrer to plaintiffs' first cause was correctly sustained.

Finally, we have concluded that plaintiffs are not entitled to attack judgments obtained by defendant prior to 1968 under section 1812.10 of the Civil Code, because prior to 1969, the agency's actions on "installment accounts" were not governed by the provisions of that section. The demurrer to plaintiffs' second cause of action was thus properly sustained.

We recognize that mass production of goods accounts for the mass selling of goods, a process that, by means of advertising, often entices the installment purchase of products for which the buyer cannot pay. Yet this mass merchandising does not justify the mass filing of law suits at places where they do not belong. Despite any claims of economy or expedition the exponents of such selling and such litigation can offer, a defendant may still insist that in order to exert his individualized right of defense, he be sued in the proper venue.

The judgment is reversed with respect to plaintiffs' third cause of action; in all other respects the judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.