CHURCHILL VILLAGE, L.L.C.; Barbara Dorsett; and Al Dorsett, individually and on behalf of the public, Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, a New York corporation, Defendant.

No. 99–CV–5073.

United States District Court, N.D. California.

May 10, 2000.

George Donaldson, Daniel B. Harris, Law Offices of George Donaldson, San Francisco, CA, Joseph J. Tabacco, Jr., Christopher T. Heffelfinger, Berman DeValerio Pease Tabacco Burt & Pucillo, San Francisco, CA, Mike Peacock, James, Hoyer, Newcomer & Smilhanich, P.A., Tampa, FL, for Churchill Village, L.L.C., Barbara Dorsett, Al Dorsett.

Dennis Stewart, Susan G. Taylor, Milberg Weiss Bershad Hynes & Lerach, LLP, San Diego, CA, George Donaldson, Daniel B. Harris, Law Offices of George Donaldson, San Francisco, CA, Joseph J. Tabacco, Jr., Christopher T. Heffelfinger, Berman DeValerio Pease Tabacco Burt & Pucillo, San Francisco, CA, for Seymour Lazar.

Dennis Stewart, Susan G. Taylor, Milberg Weiss Bershad Hynes & Lerach, LLP, San Diego, CA, George Donaldson, Daniel B. Harris, Law Offices of George Donaldson, San Francisco, CA, Joseph J. Tabacco, Jr., Christopher T. Heffelfinger, Berman DeValerio Pease Tabacco Burt & Pucillo, San Francisco, CA, John A. Yanchunis, James Hoyer, Newcomer & Smiljanich, P.A., Tampa, FL, for Joan Chalmers, Judith Saporta.

Timothy P. Crudo, James L. Day, Latham & Watkins, San Francisco, CA, Beth A. Wilkinson, Latham & Watkins, Washington, DC, for General Elec. Co.

Clinton A. Krislov, William M. Sweetman, Krislov & Associates, Ltd., Chicago, IL, John W, Pillette, Beverly C. Moore, Jr., Moore & Brown, Washington, DC, for Beckwith Place Ltd. Partnership, Susan E. Glatter Kamman.

Mila F. Bartos, Tracy D. Rezvani, Finkelstein Thompson & Loughran, Washington, DC, J. Daniel Sagarin, Elias A. Alexiades, Hurwitz & Sagarin, Milford, CT, Lawrence D. Levit, Lester L. Levy, Wolf Popper LLP, New York City, for Harriet Skurman, Norman Hickman, Phyllis Hickman, Craig Rosenfield.

## OPINION

PATEL, Chief Judge.

In November 1999, plaintiffs Churchill Village, Barbara Dorsett, and Al Dorsett, individually and on behalf of the public ("plaintiffs"), brought this action against General Electric Company ("defendant"), premised on this court's diversity jurisdiction. Plaintiffs allege two causes of action: (1) violation of unlawful, fraudulent, and unfair business acts and practices under California Business and Professions Code sections 17200 *et seq.* ("UCL"); and (2) violation of false advertising acts under California Business and Professions Code Sections 17500 *et seq.* ("FAA"). Now before the court is plaintiffs' motion for the issuance of a preliminary injunction.

## BACKGROUND

Between April 1983 and January 1989, defendant manufactured approximately 3.1 million "low end" dishwasher units. Approximately 900,000 units remain in the market today. Plaintiffs allege that defendant first learned of fires in the subject dishwashers in the late 1980s but did not report them until 1998. In November 1998, defendant filed a voluntary report with the United States Consumer Product Safety Commission ("CPSC"), the federal agency responsible for "protect[ing] the public against unreasonable risks of injury associated with consumer products." 16 C.F.R. § 1000.1(a)(1). Defendant alleges that this report was prompted by a hotel customer complaint and a fire investiga-

tion, both of which occurred in late 1998, and through which defendant first became aware of a potential product failure. The CPSC thereafter began an investigation of the dishwashers.

In October 1999, the CPSC and defendant entered into a formal settlement agreement ("Settlement"), as part of which defendant publicly announced that it was recalling the dishwashers.[1] By October 1999, the CPSC knew of fifty incidents of fires relating to the dishwashers. Of those, seven spread beyond the dishwasher, and in three cases a house or apartment was damaged. However, the CPSC expressly acknowledged that there were no reports that a single person had ever been injured by the fires. The allegedly defective part is a slide switch that allows consumers to choose between heat drying and energy saver functions. Over time, the slide switch can melt and ignite, presenting a fire hazard. The CPSC and defendant urged consumers to immediately stop using the dishwashers and to keep the doors unlatched to prevent any electrical current from going to the defective heating switch.

Under the terms of the Settlement, the CPSC and defendant agreed to a rebate program designed "to protect the public from a potential product hazard allegedly posed" by the dishwashers.[2] The Settlement offers consumers two options: (1) a $75–$125 cash rebate towards the purchase of a new GE brand dishwasher; or (2) a $25 cash refund toward the purchase of any new non-GE brand dishwasher, plus a free one-year service agreement from

defendant, effective after the expiration of the manufacturer's express warranty. In addition, defendant agreed to provide free replacement dishwashers to owners whose units were still under GE's extended service agreements. The CPSC and defendant also agreed that defendant could reach a separate accommodation with owners and operators of commercial or rental properties who did not elect to participate in the recall program. That accommodation could include discounted bulk pricing and instructions to maintenance staff to safely rewire the control circuitry.

Plaintiffs point to several gaps in the Settlement. First, the Settlement does not offer repair of the dishwashers as an option. If individual consumers wish to retain and repair the dishwashers, they must do so independent of any assistance from defendant. Second, the Settlement does not offer individual consumers the "separate accommodation" offered to property owners and operators. Plaintiffs allege that these decisions are part of defendant's marketing campaign to launch a new generation of GE dishwashers. Defendant claims that both these decisions were based on practical considerations. Defendant also claims that the Settlement meets the standards laid out under section 15(d) of the Consumer Product Safety Act ("CPSA"), the statute governing the Settlement. See 15 U.S.C. § 2064(d).

The Settlement also requires defendant to provide a variety of notices regarding the rebate program. Defendant has issued a joint press release with the CPSC,

---

1. Defendant recalled GE and Hotpoint dishwashers manufactured between April 1983 and January 1989 having the model number GSD500D, GSD500G, GSD540, HDA467, HDA477, or HDA487 and a serial number containing the letter A, M, R, S, T, V, or Z as the second character.

2. In the Settlement, the CPSC alleged that the subject dishwashers were found to pose a substantial product hazard. See Def. Exh. F. at 2. However, the CPSC acknowledged both that defendant denied that the products contained a defect or created a substantial product hazard and that the Settlement did not constitute an admission of such by defendant. See id. at 2, 3, and 7.

sent notices to potential past customers, arranged for the transmission of a video news release to all U.S. television stations, sent a radio news release to radio stations across the country, and provided a telephone line and interactive web site for consumers. Plaintiffs contend that defendant has made a number of false and misleading statements to both consumers and property owners in these notices. In particular, plaintiffs allege that defendant misled consumers on the subject of repair by sending out notices which clearly imply that a repair option is not feasible. Defendant responds that the CPSC has expressly approved all elements of the notices it has prepared. Defendant also offers evidence that, since the initiation of the recall notification, it has received more than 685,000 telephone calls in connection with the rebate. Of those calls, approximately 220,000 consumers have requested rebate coupons; 46,000 have requested refund checks; and 125,000 dishwashers have been rewired or replaced in management properties. Plaintiffs respond that these numbers reveal that at least 500,000 defective dishwashers remain in commerce, posing a serious safety hazard to consumers and the general public.

In November 1999, plaintiffs filed this action, alleging violations of California's unfair competition and false advertising statutes. Three weeks after filing this action, plaintiffs filed the instant motion for a preliminary injunction. The relief plaintiffs seek is that defendant be required to fully disclose to and offer consumers all available options for remedying the safety defect, including the same rework option it has offered property managers and payment of the costs for all who accept this option.[3]

---

**3.** Plaintiffs also seek to have defendant prove "to the satisfaction of the court" that a complete repair of the dishwashers is not possible.

*LEGAL STANDARD*

■ Ordinarily, the standard for a preliminary injunction balances the plaintiff's likelihood of success on the merits against the relative hardships to the parties. *See Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir.1999). A court may also issue a preliminary injunction if it determines that either (1) the moving party is likely to succeed on the merits and a possibility of irreparable injury exists, or (2) the moving party raises serious questions on the merits and the balance of hardships tips sharply in its favor. *See id.* (citing *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1517 (9th Cir.1992)). This framework does not consist of two independent tests, but rather represents the extremes of the continuum of equitable discretion. *See id.* (citing *Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir.1978)). Thus, "the greater the relative hardship to the moving party, the less probability of success must be shown." *Id.* (citing *National Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir.1984)). Depending on the nature of the case, the court may also consider whether the public interest favors granting relief. *See Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir.1995); *Environmental Protection Info. Center, Inc., v. Pacific Lumber Co.*, 67 F.Supp.2d 1090, 1103 (N.D.Cal. 1999).

*DISCUSSION*

■ A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Mazurek v. Armstrong,*

However, on a motion for a preliminary injunction, plaintiffs bear the burden of making this showing, not defendant.

520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)(per curiam). This already substantial burden is subject to "heightened scrutiny" where, as here, a court is asked to order a defendant to engage in certain affirmative conduct.[4] *Dahl v. HEM Pharm. Corp.,* 7 F.3d 1399, 1403 (9th Cir.1993). In such cases an injunction must not be granted "unless the facts and law clearly favor the moving party." *Id.* (citing *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979)). Plaintiffs contend that defendant's activities constitute unlawful, unfair, and fraudulent business practices as well as false and misleading advertising.[5] Specifically, they contend that the adverse impact of defendant's conduct is continuing in nature and that the general public will continue to suffer injury and losses as a result of the ongoing recall and rebate program. In particular, plaintiffs raise three issues: (1) whether the court is authorized to issue an injunction under California law; (2) whether plaintiffs demonstrate a strong likelihood of success on the merits and the possibility of irreparable injury; and (3) whether the balance of hardships tips sharply in plaintiffs' favor. The court now addresses each issue seriatim.

### 1. *The Court's Authority to Issue an Injunction*

■■ Plaintiffs' complaint arises under California's UCL and FAA. "Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction."[6] *Barquis v. Merchants Collection Ass'n,* 7 Cal.3d 94, 108, 101 Cal. Rptr. 745, 496 P.2d 817 (1972). As used in the UCL, the term "unfair competition" specifically includes unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising. Cal. Bus. & Prof.Code § 17200; *see Barquis,* 7 Cal.3d at 108, 101 Cal.Rptr. 745, 496 P.2d 817. Thus, the UCL clearly contemplates extending the protections of the unfair practices law to consumers.

### A. *Jurisdiction*

■■ As defendant notes, California law embodies a presumption against the extraterritorial application of its statutes. *See Diamond Multimedia Systems, Inc. v. Superior Court,* 19 Cal.4th 1036, 1060 n. 20, 80 Cal.Rptr.2d 828, 968 P.2d 539 (1999). With respect to the UCL specifically, section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California. *See Norwest Mortgage, Inc. v. Superior Court,* 72 Cal.App.4th 214, 222, 85 Cal.Rptr.2d 18 (1999). Indeed, beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of non-residents'

---

**4.** In addition to seeking other types of relief, plaintiffs seek relief in the form of defendant's immediate repair of the dishwashers subject to recall and defendant's adoption of a corrective information campaign.

**5.** Plaintiffs allege that (1) defendant has failed to notify the CPSC in a timely manner of the safety hazard in violation of the Consumer Product Safety Act, including 15 U.S.C. section 2064, and (2) defendant has failed to provide a fair and adequate remedy for the safety hazard presented by the dishwashers.

**6.** Defendant alleges as an affirmative defense that plaintiffs lack standing. However, the California Supreme Court has interpreted the statute to provide a liberal standing doctrine. *See Barquis,* 7 Cal.3d at 108, 101 Cal.Rptr. 745, 496 P.2d 817. "Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney ... by any person acting for the interests of itself, its members or the general public." *Id.* Here, plaintiffs act on behalf of themselves individually and on behalf of the general public. Thus, lack of standing does not appear to be a valid defense to this action.

claims that lack a nexus with California "raises significant due process problems." *Id.* at 225, 85 Cal.Rptr.2d 18 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810–11, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)).

Defendant urges that none of the alleged misconduct or injuries, except those related to California residents, occurred in California. Defendant is a New York corporation with its principal place of business in Connecticut. Negotiations between GE and the CPSC leading to the execution of the Settlement were conducted in Washington D.C. All written statements issued by GE in connection with the Settlement were disseminated from Kentucky. The toll-free telephone response lines that the settlement called for are monitored in Texas, Virginia, and Louisiana. The website on which the terms of the recall are posted is maintained in Kentucky. Defendant's sales in California constitute ten percent of its total sales of dishwashers, or approximately 300,000 units. However, defendant's in-state sales alone cannot properly be considered sufficient to establish a nexus with California.

Plaintiffs cite *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 571, 71 Cal.Rptr.2d 731, 950 P.2d 1086 (1998), for the proposition that the California Legislature's 1992 amendments expanded the scope of injunctive relief to allow injunctions against out-of-state activity. However, *Stop Youth Addiction, Inc.* "clearly involved in-state conduct injuring in-state residents, and therefore had no occasion to consider the question ... [of] whether the UCL regulates out-of-state conduct causing out-of-state injury." *Norwest*, 72 Cal. App.4th at 223, 85 Cal.Rptr.2d 18. Thus, the court finds inapposite plaintiffs' reliance on *Stop Youth Addiction, Inc.* as affirming the extraterritorial application of the UCL.

By contrast, the FAA contains language that could be interpreted to limit the statute's extraterritorial application. *See* Cal. Bus. & Prof.Code § 17500. Section 17500 prohibits false or misleading statements made "before the public in this state" and "from this state before the public in any state." *Id.* In the instant action, none of defendant's written or oral communications made in California was directed to consumers outside the state. Thus, only California consumers can proceed on a claim under the FAA.

B. *Federal Preemption*

Defendant alleges that plaintiffs' claims are preempted by federal law. There is a presumption against federal preemption. *See Cortez v. MTD Prod., Inc.*, 927 F.Supp. 386, 388 (N.D.Cal.1996) (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 662–64, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)). The Supreme Court has cautioned that state laws should be followed unless "the clear and manifest purpose of Congress" was preemptive. *Id.* at 389 (citation omitted). Where a relevant federal statute contains a preemption clause, the courts should attempt to ascertain Congress' intent regarding the scope of preemptive effect from the express language of that clause. *See id.* (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)).

In this action, the CPSA contains a preemption clause. In *Cortez*, the district court concluded that the proper interpretation of the preemption clause evinced congressional intent to preempt positive state enactments, such as statutes and regulations issued by administrative agencies, that address the same risks of injury that the operative federal standards address. *Cortez*, 927 F.Supp. at 389 (citing *Cipollone*, 505 U.S. at 518–24, 112 S.Ct. 2608). Here, plaintiffs attempt to proceed under positive state enactments in the form of

statutes. Clearly, the UCL and FAA fall within this category of laws that may be preempted. The real issue, then, remains whether the UCL and FAA address the same risks of injury that are addressed by the CPSA.

Nothing in the CPSA appears to speak directly to plaintiffs' claims of unfair business practices and false advertising. Indeed, the CPSC has promulgated a relatively small number of consumer product safety standards.[7] Where the CPSC has not promulgated highly particularized standards, courts have generally counseled the utmost hesitancy in finding that a federal statute bars a state-law action. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496–503, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

Defendant contends that its Settlement with the CPSC, which by its terms was adopted pursuant to a CPSC rule, divests this court of the authority to act. However, the CPSA contains a provision, known as the "savings clause," which expressly states that compliance with federal consumer product safety rules does not relieve an individual of liability under state common law or statute. *See* 15 U.S.C. § 2074(a). Other provisions of the CPSA also explicitly envision judicial challenges to conduct otherwise covered by the CPSA. *See* 15 U.S.C. §§ 2072, 2073. Moreover, federal preemption exists only when there is a clear showing of congressional intent. *See Medtronic*, 518 U.S. at 496–503, 116 S.Ct. 2240. As detailed in the CPSA's legislative history, Congress specifically intended that the savings clause preclude the preemption of state-law damage claims.[8]

 Furthermore, even if defendant's compliance with federal law were relevant to this court's authority to issue an injunction, the parties dispute whether defendant actually followed the federal scheme established for "substantial product hazards" and embodied in Section 15(d) of the CPSA. Specifically, the parties dispute whether defendant's recall and rebate program meets the federal standards. Thus, the court finds that plaintiffs' claims are not subject to federal preemption by the CPSA.[9]

7. The CPSC's reasons for failing to engage in more rule-making may be many. The CPSC favors other approaches, such as product recalls, over safety standards to achieve its safety goals. Also, the agency lacks the financial resources to undertake aggressive rulemaking approaches. *See generally* Robert Adler, *From "Model Agency" to Basket Case—Can the Consumer Product Safety Commission Be Redeemed?*, 41 ADMIN. L. REV. 61 (1989).

8. The Senate Commerce Committee Report on § 2074 states in relevant part: "The definition of 'consumer product safety standard' in § 2056 of the CPSA read in conjunction with § 2074 establishes Federal Government action as 'minimum' action which is not necessarily the optimum level of safety and therefore not conclusive evidence of 'due care' in product liability litigation." H.R. Conf. Rep. No. 92–1593 (1972) *reprinted* in 1972 U.S.C.C.A.N. 4596, 4650 (compliance with consumer product safety rules "not to release

any person from liability at common law to any other person").

9. Although the court does not now address it, the standards articulated under the CPSA and state laws may conflict with regard to the same risk of injury. In that instance, section 2075(a) of the CPSA provides that no state may enact a law which "prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the federal standard." 15 U.S.C. § 2075(a). State laws that conflict with CPSA rules may only be permitted if they impose a higher degree of protection from the risk of injury prescribed under the CPSA. *See* 15 U.S.C. § 2075(b). Thus, the CPSA rules may be seen as a minimum threshold of protection.

## II. *Irreparable Injury to Plaintiffs*

 Under either of the standards articulated for granting a preliminary injunction, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury. *See Big Country Foods, Inc. v. Board of Educ.*, 868 F.2d 1085, 1088 (9th Cir.1989). Plaintiffs point to the possibility that consumers and/or property managers may not be able, due to financial considerations, to take the preventive steps necessary to protect themselves from the fire danger posed by defendant's dishwashers. This, they claim, creates the potential for ensuing tragedy. Defendant responds that plaintiffs are simply alleging the consumers' potential out-of-pocket expenses as an irreparable injury. Yet "[i]t is well established ... that such monetary injury is not normally considered irreparable." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir.1980).

Plaintiffs claim, however, that as a motion for injunctive relief, the purpose of this action is not to obtain money damages but rather to protect consumers and the general public from serious injury. They point to defendant's own communications to consumers as evidence of potential injury to plaintiffs: "Because your dishwasher has been identified as being included in this recall, you must discontinue use and replace it as soon as possible." Salisbury Dec., Exh. A. This message, they claim, asserts a safety danger inherent in the dishwashers.

 Of the 3.1 million subject dishwashers in use since 1983, fifty incidents have been reported to the CPSC. Plaintiffs offer no evidence that a single reported incident was caused by one of these dishwashers. More significantly, there is no evidence that a single person has ever been injured by a subject dishwasher. Thus, plaintiffs can only suggest the possibility of irreparable harm. Speculative injury, however, does not constitute irreparable injury. *See, e.g., Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849 (9th Cir.1985).

Even if the court were to accept the possibility that the safety of consumers could be endangered through continued use of the dishwashers, a mere possibility of irreparable injury would not meet plaintiffs' heavy burden on a preliminary injunction. It must be tied to a likelihood of success on the merits of plaintiffs' claims.

## III. *Likelihood of Success on the Merits of UCL Claim*

 Conduct may violate the UCL if it is unfair, fraudulent, or unlawful, and plaintiffs contend that defendant has violated all three prongs. A plaintiff under the UCL is not required to show that the defendant actually intended to injure anyone or that anyone was actually injured. *See People ex rel. Van de Kamp v. Cappuccio, Inc.*, 204 Cal.App.3d 750, 758–61, 251 Cal.Rptr. 657 (1988). Indeed, "the Legislature apparently intended to permit the courts to enjoin ongoing wrongful busi-

---

The plain language of the CPSA appears to affirm the ordinary principles of "conflict" and "field" preemption. Those principles make clear that a federal requirement preempts a state requirement if (1) the state requirement actually conflicts with the federal requirement, either because compliance with both is impossible or because the state requirement "stands as an obstacle to the accomplishment and execution of the full pur-

poses and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); or (2) the scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). *See Medtronic*, 518 U.S. at 507, 116 S.Ct. 2240 (Breyer, J., concurring).

ness conduct in whatever context such activity might occur." *Committee on Children's Television Inc. v. General Foods Corp.*, 35 Cal.3d 197, 210, 197 Cal.Rptr. 783, 673 P.2d 660 (1983). The court examines each of the business wrongs that plaintiffs allege.

### A. *Unfair Business Practice*

■ Plaintiffs contend that the rebate program is unfair in two respects. First, they argue that the program is unfair to residential customers because defendant has not offered to repair or rework the dishwashers at its own expense. Second, they argue that the program is unfair to property managers because, although defendant has offered to provide the necessary information and parts to perform the rework, defendant has not offered to perform the service and carry the expenses itself.

■ "Courts may not simply impose their own notions of the day as to what is fair or unfair." *Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 182, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). Recently, the California Supreme Court held that any finding of unfairness to competitors under the UCL must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186–87, 83 Cal.Rptr.2d 548, 973 P.2d 527. The *Cel–Tech* court defined unfairness as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* Thus, a business practice cannot be unfair under the UCL if that practice is permitted by law.[10]

Defendant alleges that its conduct is permitted under federal law. The CPSA expressly allows the manufacturer to elect from one of three options when implementing a product recall. *See* 15 U.S.C. § 2064(d). Defendant claims to have included all three options, leaving the choice to the consumer. Plaintiffs again point to the language of the "savings clause" which expressly disallows any manufacturer to be insulated from liability. They allege that defendant has structured a rebate scheme that amounts to coercion in that it leaves consumers with little alternative but to buy a new GE dishwasher.

Plaintiffs' argument of coercion fails on the evidence it has submitted to the court. Defendant has structured a rebate scheme that encompasses its duties in implementing a product recall. That defendant does not compensate consumers for incidental costs pursuant to this scheme cannot rise to the level of being "unfair" under the UCL or FAA. First, the more persuasive evidence before the court is that the useful life of the dishwashers is nine to eleven years. That fact is supported by numerous independent studies, including several by an industry trade publication, the U.S. Department of Agriculture, the National Association of Home Builders, and the CPSC itself. *See* Def. Exhs. A–E. Thus, the agreement is tailored to the presumable useful life of the dishwashers. In fact, the statute only requires defendant to refund the purchase price, less a reasonable allowance for use. *See* 15 U.S.C. § 2064(d)(3). Under this formula, the refund amount would be reduced to zero for many machines, as the reasonable allowance for use would meet or exceed the original purchase price on these outdated dishwashers. Second, defendant consid-

---

10. Although the California Supreme Court declined to extend its holding to consumer actions, the lack of distinction between competitor and consumer in the language of the UCL renders this definition equally valid in the consumer context.

ered the results of a random survey it conducted prior to initiating the rebate program. When 117 consumers with ten-year-old dishwashers were asked whether they hypothetically would prefer a $50 coupon for the purchase of a new GE dishwasher or a $50 credit toward the repair of a defective dishwasher, approximately seventy-five percent of the respondents stated that they would prefer the coupon. *See* Jacoby Dec. at 4. Thus, defendant attempted to ascertain the desires of its consumers before structuring a rebate scheme.

Plaintiffs have failed to adduce persuasive and admissible evidence supporting their contentions that defendant has implemented an unfair rebate scheme. Plaintiffs submit newspaper clippings and a news bulletin from the CPSC, evidence that is clearly inadmissible as hearsay. Further, in his declaration, Jeffrey Salisbury, owner of Churchill Village, simply makes conjectural statements about the defendant's rebate program. He also attempts to recount the details of a telephone conversation with a GE sales representative, evidence that is inadmissible as hearsay upon hearsay. Finally, plaintiffs' appended copies of the defendant's recall program fail to establish anything other than the authenticity of the rebate program, a fact that is not even disputed in the instant action.

The foregoing evidence demonstrates that defendant's rebate scheme fits within the parameters prescribed by the CPSA. Accordingly, defendant's actions were lawful and thus not unfair.

### B. *Fraudulent Conduct*

 Plaintiffs allege that defendant's conduct was fraudulent. A reasonable consumer standard applies to a false advertising claim under the UCL. *See*

*Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir.1995). In order to succeed on a claim of fraud, plaintiffs must assert that "members of the public are likely to be deceived" by defendant's conduct. *Committee on Children's Television,* 35 Cal.3d at 214, 197 Cal.Rptr. 783, 673 P.2d 660; *see South Bay Chevrolet v. General Motors Acceptance Corp.,* 72 Cal.App.4th 861, 896, 85 Cal.Rptr.2d 301 (1999) (judgment in favor of defendant appropriate where plaintiff failed to provide "substantial evidentiary support that anyone was actually misled or likely to be misled"). That burden, however, cannot be met through anecdotal evidence. *See Haskell v. Time, Inc.,* 965 F.Supp. 1398, 1407 (E.D.Cal.1997) (citing *William H. Morris Co. v. Group W. Inc.,* 66 F.3d 255, 258 (9th Cir.1995)). In *William H. Morris,* the Ninth Circuit found that plaintiff had not carried its burden of demonstrating that a "significant portion" of the recipients of a letter was misled. *William H. Morris,* 66 F.3d at 258. Plaintiffs' evidence consisted solely of the testimony of two of 300 recipients. *See id.* Likewise, in the instant action, plaintiffs offer the declarations of only two consumers who imply that they felt deceived by defendant's representations about the rebate program. *See* Wall Dec. ¶¶ 5–6; *see also* Dorsett Dec. ¶¶ 5–6. Even those declarations, however, contain mostly conclusory statements about an "unfair" rebate program that does not account for consumers' fixed incomes.[11] Wall Dec. ¶¶ 5–6; *see* Dorsett Dec. ¶¶ 5–6. One consumer bases her feelings of "unfairness" on the contents of a telephone call she received, evidence that is again clearly inadmissible. Wall Dec. at ¶ 5. Clearly, under the standard articulated above, this anecdotal evidence is insuffi-

---

11. The court notes that even individuals living on fixed incomes may enjoy a great degree of purchasing power, especially if they live in Rancho Bernardo, as do two of the consumers in the instant action.

cient to establish a claim for fraudulent conduct.

### C. *Unlawful Conduct*

■ Plaintiffs also allege that defendant acted unlawfully because it failed to provide timely notification of a safety hazard to the CPSC in violation of the CPSA. Defendant has already notified the CPSC, so there is no injunctive relief to award in this regard. On the record before this court, plaintiffs have not established by admissible and probative evidence that the notification was untimely.

Moreover, even if a remedy could be found, plaintiffs have not established that defendant engaged in unlawful conduct. Under the CPSA, a manufacturer is required to notify the CPSC if the manufacturer, among other things, "obtains information which reasonably supports the conclusion" that the product "contains a defect which could create a substantial product hazard" or "creates an unreasonable risk of serious injury or death." 15 U.S.C. § 2064(a)-(d). Plaintiffs offer only hearsay evidence suggesting that defendant knew of dishwasher fires in the late 1980s. Without a clearer foundation for defendant's knowledge, the court cannot find that defendant's conduct was unlawful.

### IV. *Likelihood of Success on Merits of FAA Claim*

■ As noted, this court does not have jurisdiction over FAA claims brought by nonresidents of California. Thus, the court considers only the FAA claims of those plaintiffs who reside in California.

Plaintiffs offer no additional evidence to support their FAA claims. Rather, their FAA claims are simply premised on the same evidence offered to support their claim that defendant's conduct was fraudulent under the UCL. Moreover, the FAA requires proof that defendant knew its ad-

vertising was false. *See* Cal. Bus. & Prof. Code § 17500. Plaintiffs offer no evidence of defendant's knowledge on this issue.

The court finds that plaintiffs offer insufficient evidence to support a claim of fraudulent conduct under the UCL. Likewise, this evidence remains insufficient to support a likelihood of success on plaintiffs' FAA claims.

### V. *Balance of Potential Harms*

■ On a motion for a preliminary injunction, to overcome a weak showing of meritoriousness, the moving party must make a very strong showing that the balance of hardships tilts in her favor. *See Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). The court has determined that plaintiffs' alleged harms are speculative at best and unsupported by admissible and probative evidence. However, even if the court accepts that the possibility of irreparable injury to plaintiffs exists, the court must also determine whether there is any potential injury to defendant. As defendant asserts, it would face a significant harm if the rebate program were altered according to plaintiffs' desired relief. Not only would rewiring thousands of old dishwashers of questionable life constitute a substantial expense, but the time, effort, and money expended on the rebate program to date would be undercut. Furthermore, it is more likely than not that the cost would exceed the value of the machines, given their useful life.

Plaintiffs thus fail to demonstrate that, absent the injunctive relief they desire, the balance of hardships sharply tips in their favor. General Electric may be known to "bring good things to life," but plaintiffs have not demonstrated that it is defendant's responsibility to bring good things *back* to life.

*CONCLUSION*

Plaintiffs have asked this court to enjoin defendant and order it to engage in affirmative conduct. To succeed on a motion for a preliminary injunction, plaintiffs must carry the heavy burden of demonstrating that they are either likely to succeed on the merits or that they face a strong possibility of irreparable injury. Plaintiffs have not met their burden.

For the foregoing reasons, the court hereby DENIES plaintiffs' motion for a preliminary injunction as to both causes of action under the California Business & Professions Code.

IT IS SO ORDERED.