Filed 3/6/13  Grossman v. Capital One Bank CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MARC GROSSMAN, | |
| Plaintiff and Appellant, | E053925 |
| v. | (Super.Ct.No. CIVRS908826) |
| CAPITAL ONE BANK (USA), N.A., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Barry L. Plotkin, Judge.  Affirmed.

Law Offices of Marc E. Grossman, Brandon J. Carr and Gordon Strange for Plaintiff and Appellant.

Doll Amir & Eley, Hunter R. Eley and Hemmy So for Defendant and Respondent.

Plaintiff and appellant Marc E. Grossman filed a complaint against defendant and respondent Capital One Bank, (USA), N.A., alleging 10 causes of action pertaining to the purported unauthorized usage of his credit card by plaintiff's ex-wife, Mandy Grossman

1

(Mandy).[1,2]  Defendant filed a motion for summary judgment concerning all 10 causes of action.  The trial court granted defendant's motion and entered judgment in favor of defendant.  Plaintiff filed a motion for new trial, which the court denied.  Plaintiff appeals contending the court erred in granting defendant's motion for summary judgment because there were triable issues of material fact.  We affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff alleged that on September 20, 2002, he filed for dissolution of marriage from Mandy.  Plaintiff applied for a credit card with defendant on February 18, 2003.  The credit card agreement provided, "'If your cards or account access checks are lost or stolen or if someone else may be using them without your permission, notify us at once by calling the telephone number shown on the front of your periodic statements.  Your liability for unauthorized use of your cards or account access checks will not exceed $50.00.  You will not be liable for unauthorized use that occurs after you notify us.'"

Plaintiff alleged that another term of the agreement provided, "You can rest easy with our Early Fraud Detection Program.  A team of specialists monitors all our accounts 24/7 for suspicious activity.  As soon as something sets off a red flag, we'll let you know.

---

[1]  In its respondent's brief, defendant refers solely to a first amended complaint (FAC) ostensibly filed by plaintiff; however, no FAC appears in the record.  Neither do we find any mention of the filing of a FAC in the register of actions.  The record and the register of actions do reflect the filing of an amendment to the complaint to correct defendant's name.  It is to the complaint and the amendment to which we assume defendant is referring when it mentions the FAC.

[2]  The complaint also alleged four causes of action against Mandy; however, she is not a party to this appeal.

2

This system stops most cases of fraud, but just in case one slips through, you have $0 fraud liability. That means if your card is lost or stolen, you won't have to cover the bill. Please note $0 fraud liability claims are subject to verification."

According to plaintiff's complaint, Mandy and he jointly held the credit card account. Plaintiff averred their divorce became final on June 16, 2004. Plaintiff contended Mandy was subsequently removed from the account; however, plaintiff failed to state facts or produce documents evidencing such removal, in response to discovery.

According to the declarations of defendant's "Sr. Extended Operations Associate," an investigation of plaintiff's account was triggered by defendant's internal systems on April 3, 2012. One of defendant's investigators contacted plaintiff on April 6, 2009, who said the charges were okay. Contrariwise, plaintiff's declaration averred he contacted defendant on April 6, 2009, to report unauthorized transactions on his account. Plaintiff's account statement, with a payment due date of April 6, 2009, reflected a new balance of $543.46, including charges made through March 12, 2009, on an account with a $500 credit limit. Mandy was removed as an authorized user from plaintiff's account on April 8, 2009.

On April 9, 2009, defendant sent plaintiff a letter informing him of its investigation and requesting he complete the included "Fraud Information Form." The letter noted that "Sometimes, during the course of investigations, we find that certain charges are not fraud. In these situations, we call our customers to talk about what we have found and apply the charges back to these customers' accounts." The "Fraud Information Form" listed 10 ostensibly suspected unauthorized charges occurring

3

between March 31 and April 7, 2009, totaling $1,262.50. Defendant declared plaintiff never returned a completed "Fraud Information Form."

Defendant's investigation revealed Mandy had been added as an authorized user on the account on August 25, 2005.[3] Plaintiff's last payment on the account was made on or about April 7, 2009.[4] Plaintiff's account statement, with a payment due date of May 8, 2009, reflected payments and credits totaling $3,150.83; a finance charge of $85.98; and transactions totaling $2,704.82 from March 12, through April 7, 2009, for a new balance of $183.43.

On April 13, 2009, defendant sent plaintiff a letter in which it informed him it had completed its investigation and determined the charges were not fraudulent, and would be charged back to his account. Defendant declared that one of its representatives also called plaintiff on April 13, 2009, regarding the conclusion of its investigation. Defendant's account statement, with a due date of June 6, 2009, showed a balance of $2,193.12, reflecting a charge-back of the originally disputed charges.

Plaintiff apparently had no further contact with defendant until filing the instant suit on August 10, 2009. On October 13, 2009, plaintiff's account went into default with an amount owing of $2,620.10. The account was recalled from collections on December 1, 2009. Plaintiff's complaint, as against defendant, pled the following causes of action: (1) False Advertising (Bus. & Prof. Code, § 17200); (2) False Advertising (Bus. & Prof.

___

[3] Plaintiff declared he never authorized that Mandy be added to his account.

[4] Plaintiff listed as "undisputed" defendant's assertion it had last received payment from plaintiff on April 9, 2009.

4

Code, § 17500); (3) Fraud; (4) Negligent Misrepresentation; (5) Negligence; (6) Breach of Contract; (7) Breach of Express Warranty; (8) Trade Libel; (9) Violation of Truth in Lending Act (15 U.S.C. § 1643; Bus. & Prof. Code, § 17203); (10) Violation of Truth in Lending Act (15 U.S.C. § 1643; Bus. & Prof. Code, § 17200).

On December 2, 2010, defendant filed a motion for summary judgment as to all causes of action. Plaintiff filed his opposition on February 1, 2011. On February 10, 2011, defendant filed its reply to plaintiff's opposition. Defendant also concurrently filed evidentiary objections to plaintiff's evidence in support of his opposition.

On February 15, 2011, the court held a hearing on defendant's motion for summary judgment. The court sustained most of defendant's evidentiary objections. It overruled all of plaintiff's evidentiary objections. The court granted defendant's motion for summary judgment as to all 10 causes of action and entered judgment for defendant. The court's ruling was based primarily on plaintiff's failure to submit admissible evidence of damages. In denying plaintiff's motion for new trial, the court likewise indicated there were no triable issues as to damages.

## DISCUSSION

Plaintiff contends the court erred in granting defendant summary judgment on his first, second, ninth, and tenth causes of action. We hold plaintiff failed to produce admissible evidence that he sustained damages based upon defendant's conduct with respect to those causes of action. Thus, the court properly entered summary judgment against plaintiff.

5

"'[O]n appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.]" (*Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 534.) "A trial court may only grant a motion for summary judgment if no triable issues of material fact appear and the moving party is entitled to judgment as a matter of law. [Citations.] The evidence must be viewed in the light most favorable to the nonmoving party. [Citation.]" (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

"As the moving party, the defendant must show that the plaintiff 'has not established, and cannot reasonably expect to establish, a prima facie case' on one or more elements of the cause of action. [Citations.]" (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 285.) "'[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." [Citations.]' [Citation.]" (*Lyle v. Warner Bros. Television Productions* (2006) 38 Cal.4th 264, 274.)

Plaintiff sued under California's statutory unfair competition law (UCL). (Bus. & Prof. Code, § 17200 et seq.) "A UCL action is equitable in nature, and damages cannot be recovered. [Citation.] '[A] plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices in order to protect the public and restore to the parties

in interest money or property taken by means of unfair competition.' [Citations.] However, '[a]s amended pursuant to the 2004 voter approval of Proposition 64, the UCL in [Business and Professions Code section] 17204 now requires a plaintiff to establish that [he] has "suffered injury in fact and has lost money or property."' [Citations.]" (*Stearns v. Select Comfort Retail Corp.* (N.D.Cal. 2010) 763 F.Supp.2d 1128, 1151.) "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1149; *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128, 1139 [no right to seek restitution of finance and interest charges never paid by plaintiff].)

"'Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction.' [Citation.] As used in the UCL, the term 'unfair competition' specifically includes unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading, advertising. [Citations.]" (*Churchill Vill., L.L.C. v. Gen. Elec. Co.* (N.D.Cal. 2000) 169 F.Supp.2d 1119, 1126.) "The injunctive relief offered by the [UCL] protects the consumer by stopping the abusive debt collector in its tracks." (*Irwin v. Mascott* (N.D.Cal. 2000) 112 F.Supp.2d 937, 964.)

Business and Professions Code sections 17200 and 17500 have been preempted by the federal Truth in Lending Act (TILA), with respect to disclosures and advertising. (*Silvas v. E\*Trade Mortg. Corp.* (2008) 514 F.3d 1001, 1006; 15 U.S.C. § 560.2 et seq.) TILA permits recovery against the credit card company only for fraudulent purchases until the time plaintiff received statements and had a reasonable time to examine them for

7

fraudulent charges.  (*Minskoff v. Am. Exp. Travel Related Services Co., Inc.* (N.Y.C.A.2 1996) 98 F.3d 703, 710; cf. *Azur v. Chase Bank, USA, Nat. Ass'n.* (2010) 601 F.3d 212, 217 [TILA "does not provide the cardholder with a right to reimbursement."].)

Here, plaintiff failed to adduce admissible evidence that he had sustained any damages or that he was entitled to injunctive relief; thus, the court properly entered summary judgment against him.  Plaintiff marked as "undisputed" defendant's assertion that it had last received payment from plaintiff on or about April 9, 2009.  This would reflect payment for charges made solely by plaintiff himself, not for any of the charges he alleged were unauthorized.  Plaintiff's account statement for the next month reflected the purchases, which plaintiff apparently regarded as unauthorized, along with credits for those purchases; it contains the 10 transactions on the "Fraud Information Form" that were apparently initially deemed to be unauthorized.

However, the next monthly statement reflects the charge back indicated in defendant's letter, regarding what would occur should defendant find the charges were authorized.  Plaintiff never made another payment to his account, including for transactions he did not dispute as being unauthorized.  Although defendant sent the account to collections, defendant later recalled it from collections.  Thus, plaintiff failed to produce admissible evidence as to what damages he would be entitled.

As to plaintiff's argument he was entitled to injunctive relief, there was simply no admissible evidence produced that he or any other individual was fraudulently induced to obtain credit from defendant by its agreements or advertisements.  Defendant's advertising materials indicated users would be limited in liability to $50 for unauthorized

use. Its materials indicated liability would be limited to $0 for fraudulent use. Plaintiff failed to adduce admissible evidence the transactions were unauthorized or fraudulent. In fact, defendant expressly found otherwise. Plaintiff failed to complete and return the "Fraud Information Report" or otherwise challenge defendant's findings.

Indeed, as the trial court noted, even if it were to find that Mandy was not an authorized user "what damages had [plaintiff] suffered? I am at a loss to understand what admissible evidence there is that he suffered any damages." "There's no evidence of any damages or harm." "There are no viable claims under the cause of action for violation of Business and Professions Code Section 17200. And the second and tenth causes of action, based on violation of [Business and Professions Code Section] 17500, fail because the plaintiff has not shown any right to restitution. All the evidence before the Court shows that [plaintiff] never paid the disputed charges."

"The plaintiff has not demonstrated any false advertising or that the public is likely to be deceived by any of the bank's advertising practices respecting its fraud policy. That eliminates the first, second, ninth, and tenth causes of action." In response to plaintiff's motion for new trial, the court reiterated, "In the end, I still come back to the belief that . . . there is not a triable issue of fact as to damages." Thus, the court acted appropriately in granting defendant's motion for summary judgment.

Both parties cite to Civil Code sections 1747 et seq. (the Song Beverly Credit Card Act of 1971 (SBCCA)) and cases interpreting those sections, even though plaintiff did not sue pursuant to that Act. Nevertheless, we shall address plaintiff's complaints brought via his exposition of *Young v. Bank of America* (1983) 141 Cal.App.3d 108

9

(*Young*). In that case, the plaintiff permitted her friend to use her credit card for the sole purpose of making one purchase, with the condition he call her daily. After not hearing from him for two days, the plaintiff called her credit card company and reported the card stolen, requesting it cancel the card immediately. (*Id*. at pp. 111-112.)

The plaintiff later went to a bank branch to confirm the substance of her phone call. She also wrote a letter to the defendant repeating her earlier report that the card had been stolen. Months later, the defendant recovered the card but not before $2,198.32 in charges had been made. The bank refused to adjust the balance and billed the plaintiff for the full amount. The defendant reported to a credit agency that the plaintiff had exceeded her credit limit and her account was past due. The defendant repeatedly called her workplace and parents' home seeking payment of the disputed amount. The plaintiff later applied for and was refused a credit card based on the unfavorable report on her credit from the defendant. (*Young*, *supra*, 141 Cal.App.3d at p. 112.) The superior court found the charges unauthorized, the defendant's acts a willful violation of the statute, limited plaintiff's liability to $50, and allowed her suit for emotional distress damages; the appellate court affirmed the judgment. (*Id*. at pp. 113-115.)

*Young* does not avail the plaintiff for several reasons. First, as we noted *ante*, plaintiff did not sue pursuant to the SBCCA. Second, in *Young*, all the charges for which the defendant attempted to hold the plaintiff responsible occurred after she reported her card stolen and requested it be cancelled. Here, all the disputed transactions occurred before or shortly after the parties' telephone conversation regarding the charges. Defendant removed Mandy from the account by the date of the last disputed charge. No

10

further disputed charges were made.  Third, defendant failed to adduce admissible evidence of any damage from any ostensible bad credit report.[5]  Although, defendant initially placed plaintiff's account in collections it subsequently removed it.  Fourth, plaintiff never pled nor proved any emotional distress damages below.  Even so, a UCL action does not appear to permit emotional distress damages.  (*Stearns v. Select Comfort Retail Corp.*, *supra*, 763 F.Supp.2d at p. 1151.)  Thus, even if the SBCCA were applicable to the instant case, the failure of plaintiff to produce admissible evidence of damages rendered his suit the proper subject of summary judgment.

Defendant, perhaps preemptively, addresses an issue purportedly raised by plaintiff in his pleadings, that the court should have granted plaintiff a continuance to permit him to conduct additional discovery in order to oppose the motion for summary judgment.  Plaintiff takes up the issue in his reply brief; however, we do not address issues first raised in a reply brief.  (*People v. Tully* (2012) 54 Cal.4th 952, 1075 ["It is axiomatic that arguments made for the first time in a reply brief will not be entertained . . . ."].)

---

[5]  Plaintiff alleged damages below as being "well in excess of a hundred thousand dollars" for his inability to obtain financing on real property at a better interest rate due to a purported negative credit report by defendant.  However, the court sustained defendant's evidentiary objection to the allegation based on it being conclusory and without foundation.  Plaintiff does not attack the court's evidentiary rulings; therefore, he cannot rely on evidence to which the court sustained objections.  (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015; *Roe v. McDonald's* Corp. (2005) 129 Cal.App.4th 1107, 1114.)

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.

12